EBENEZER LANE v. JAMES A. KENNEDY ET AL.

L. being the owner of lands adjoining a public highway, regularly laid out and used by the public, extended his fence so as to inclose a portion of the ground within the surveyed lines of the highway, which portion was not then used nor required for the public travel, and kept up said fence without any objection, for upward of twenty one years. Held: that such partial encroachment upon the side of a surveyed and traveled highway, was not *necessarily adverse* to the public, nor *inconsistent* with its easement, and therefore constituted no bar to its reclamation by the supervisor, when required for the public travel.

ERROR to the district court of Butler county.

This action was originally brought by Lane, in 1852, in the court of common pleas of Butler county, and thence appealed to the district court; and therein, at the May term, 1857, the case tried to a jury, and resulted in a verdict for the defendants.

Lane *v.* Kennedy et al.

The form of the action was trespass, the declaration being under the old form of pleading. The plea was the general issue with a notice that the defendant, James A. Kennedy, was acting as supervisor for road district No. 1, in Oxford township, Butler county ; and that it became his duty to open all public roads and streets in the district, and to keep the same in repair, and remove, or cause to be removed, all obstructions that might from time to time be found thereon. That the close of the plaintiff was situate in said road district, and it became his duty, as supervisor, to remove the fence of plaintiff, because it was built upon and obstructed the street known as East Exterior street, in the town of Oxford ; and that the other defendants, at the request of said supervisor, assisted in removing said fence, and that they were justified in so doing.

After the rendition of the verdict, the plaintiff moved for a new trial, because the court misdirected the jury ; which motion was overruled and the plaintiff excepted.

It appears from the bill of exceptions, that after the close of the testimony and in view of the facts which that testimony tended to establish, the district court charged the jury among other matters as follows :

" If you find from the evidence, that prior to the west fence of the lots in controversy being made, the president and trustees of the university caused East Exterior street to be laid out and marked four rods wide, and opened through north and south, the distance of plaintiff's lots; and if you find, that after said road had been laid out and opened part of its width, the plaintiff built or moved out his fence on, and so as to inclose, only the part of the road not laid out or used ; and if you find that the trespass complained of consisted only in the removal of such fence from where it had been placed in the road, back on the east line of the road, as originally laid out ; then, and in such case, the plaintiff can not claim the lands in controversy, by the statute of limitations, although his fence may have stood out in, and included part of the width of the road, for the period of twenty one years or more."

Several exceptions were taken to the charge of the court; but the one above stated was relied on in the argument, as showing error.

*W. H. Ransford & Smith, Clark & Ryan,* and *Thomas Milikin,* for plaintiff in error :

That "municipal corporations are subject to the operation of the statute of limitations, in the same manner, and to the same extent as natural persons ;" and that "notorious and uninterrupted possession for more than twenty one years, by a private individual, under a claim of right, of land dedicated to a city or town for a street or public square will bar the claim of the city or town to its use," are propositions well settled in this state by the cases of *The Lessee of the City of Cincinnati* v. *The First Presbyterian Church,* 8 Ohio . Rep. 298, and *The City of Cincinnati* v. *Evans,* 5 Ohio St. Rep. 594.

The present case is not distinguishable from these.

The ruling of the district court was based upon an evident misconception of the case of *Fox* v. *Hart,* 11 Ohio Rep. 414. In that case, the question was, whether the right of the public to that portion of the highway within the plaintiff's inclosure, had been lost by *nonuser ;* and the court held, that "where there has been a continued user of a highway, though its width has been encroached upon by the adjacent owner for eighteen years, the right is not lost." The adjacent owner, it will be remembered, had not been in possession of the disputed portion of the highway for *twenty one years ;* and the intention of the public to abandon their right, was conclusively rebutted by their continued use of a portion of the road. The question in the present case is not, whether the public have *abandoned their right* to a portion of East Exterior street, by nonuser for eighteen years, but whether *twenty one years adverse possession* of the ground in dispute, does not conclusively establish the plaintiff's title.

*Edward Woodruff* and *Elijah Vance,* for defendants in error :

The necessities of the public—as the travel increased, the

population and improvements of the country extended—required the use of this highway to its full width. The road had not been abandoned, but used from the time the township of Oxford was first surveyed. It is a case very analogous to that of *Fox* v. *Hart*, in the 11 Ohio Rep. 416.

In *Peck and others* v. *Clark and others*, 19 Ohio Rep. 370, the court, in construing the statute in relation to vacating roads for *nonuser*, says, that it only applies to roads which have been authorized, but never opened ; and they recognize the right of the public to keep open all roads which have been opened, and to remove obtructions therefrom.

In *Lamb* v. *Coe*, 85 Wend. 642, the court decide that *crooked fences* are not boundaries—although they may have continued for thirty years.

We think the interests of the public require that the public roads, streets, and highways, should not be subjected to encroachments by the private owners of adjoining lands, but that at any distance of time the public should have the right to the full width of the road and to remove all obstructions therefrom, otherwise an inducement would be held out for avaricious men to make early encroachments, and when the public officers were not as vigilant as they should be, to take advantage of the lapse of time and acquire a portion if not the whole, of a public highway.

The question, whether municipal corporations are subject to the operation of the statute of limitations, has but a remote bearing upon the case, for we contend that the possession of the plaintiff in error, and those under whom he claimed, was not such an *adverse possession*, in favor of which the statute ever began to run.

The cases cited by the plaintiff's counsel, differ very essentially from the one under consideration.

The case of *Fox* v. *Hart*, 11 Ohio Rep. 414, we think, was not misconceived by the district court, as counsel for plaintiff in error suppose ; on the contrary we believe that case is strictly an authority in favor of the defendants in error, and when taken in connection with the case of *Lamb* v. *Coe*

15 Wend. 642, makes the charge of the court below to the jury, entirely consistent with law and common sense.

PECK, J.—The part of the charge which is excepted to, assumes that the street encroached upon, was regularly laid out, marked and established many years since *four rods wide*, which was much wider than the public travel· *then* required, but that so much of said street, throughout its entire 'ength, as was then required, had been used by the public from that time up to the period when the plaintiff's fence was removed by the supervisor, and that the plaintiff having become the owner of lands adjoining said street, extended his fence so as to inclose, with his other lands, ground within the lines of said street, which was not then used nor required for the purposes of public travel.

The question therefore arises, under the charge of the court below, whether such *partial encroachment* upon the lines of a street or highway, if continued uninterruptedly, for the period of twenty one years, will prevent its subsequent use by the public, if the necessities of public travel should thereafter require it, without a new condemnation.

It is, undoubtedly, true, that the town of Oxford, which had the custody and control of the street at the time it was encroached upon, like all other municipal corporations, is subject to the operation of the statute of limitations, " in the same manner and to the same extent as natural persons," (8 Ohio Rep. 298, approved in 5 Ohio St. Rep. 594); but the mere undisturbed possession of lands for any length of time, which is all that the charge assumes, does not, of itself, create such bar as against a natural person. To have such effect, the possession must not only have been open and notorious, but it must also have been *adverse* during the whole period of twenty one years.

The fact of possession *per se*, is only an introductory fact to a link in the chain of title by possession, and will not simply of itself, however long continued, bar the right of entry of him who was seized, and, of course, creates no positive title in any case. The reason, in other words, is, that it may

have been a *permissive* possession, which, in the language of the master of the rolls, in 2 Jac. & Walk. R. 1, however long it may, in point of fact, have endured, could never ripen into a title against anybody." Ang. on Limit., sec. 384.

To make such possession *adverse* there must have been an intention on the part of the person in possession to *claim title*, so *manifested* by his declarations or his acts, that a failure of the owner to prosecute within the time limited, raises a presumption of an extinguishment or a surrender of his claim.

The question is one of much practical importance in this state. The capacities of its streets and public highways, whether prescribed by statute or established by the proprietors of towns or embryo cities, were fixed with regard to the *future* rather than the *present* exigencies of the communities in which they were located. At first, a mere trace would have sufficed for all the travel where, in process of time, an avenue is scarcely adequate to accommodate all who, for business or pleasure, may desire to traverse it.

The public have a *mere easement*—a mere right of transit over it. And if the facilities are ample for the time, no one feels specially interested in seeing that the lines of the road have not been partially encroached upon by an adjoining proprietor, who, after all, owns the land subject to the easement. Public opinion would scarcely sustain a supervisor who should require the removal of a fence, which encroaches slightly upon the highway, if ample space is still left for all travelers.

Unlike the case in 5 Ohio St. Rep. 594, there was nothing in the character of the improvement, which indicated an intention to *permanently* appropriate the land. It was a mere fence; and, as the bill of exceptions informs us, a *worm fence* and *crooked at that.* He carefully avoided inclosing any part of the road actually used by the public. He infringed no right which was then enjoyed or apparently desired. Nothing was done to excite the apprehension of the public or to call for its protest. We hear of no *declarations*, and all his acts were consistent with a *temporary* occupancy, by the *permission* or the mere *sufferance* of the public, till the

land should be required for its use. In *Kirk* v. *Smith*, 9 Wheat. 288, Ch. J. Marshall says, "it would shock that sense of right, which must be felt equally by legislators and by judges, if a possession, which was *permissive* and *entirely consistent with the title of another*, should silently bar that title."

The circumstances do not show that the plaintiff, in placing his fence up to the traveled part of the street, thereby designed or intended to withhold the part inclosed from the public use, should it ever be required, and we are not at liberty to presume it. Fraud and intentional wrong are never presumed, but must be proved. Where the circumstances surrounding the possession, are entirely reconcilable with a continued recognition of the ultimate right of the public, the possession can not well be said to be adverse in any just sense of that term.

In *Fox* v. *Hart* (11 Ohio Rep. 414), it was held that a partial encroachment upon a traveled highway by an adjacent owner, though continued for eighteen years, did not work a forfeiture, as for *nonuser*, of the part so encroached upon, and *that there was "nothing to authorize the presumption, that any portion of it had been abandoned, or would not be opened, as soon as the public convenience should require."*

It must be borne in mind that, in the case at bar, the road was not *closed up* and the public thereby *excluded* from any use of the street. In such case, the entire exclusion of the public would doubtless be such an ouster or disseizin, as would require a suit to be brought within the statutory period, upon the principles settled in *Lessee of the City of Cincinnati* v. *The First Presbyterian Church*, 8 Ohio Rep. 298.

Nor is it like the case of *The City of Cincinnati* v. *Evans*, (5 Ohio St. Rep. 594), where the *purpose* of the possession and *intended permanency*, were indicated by the erection within the bounds of the street, of the front of a large and costly ware-house. The erection of such a building, in such a place, was ample notice to the city authorities that he thereby intended a *permanent appropriation* to his private and individual benefit of a portion of the public easement, and

called for immediate and effective measures upon their part, to prevent it. The case was, in this view of it, rightly determined; but as will be seen by a reference to the facts therein stated, it might with equal, if not greater propriety, have been placed upon the ground of an *estoppel in pais* on the part of the city authorities; the building having been located by the city *surveyor* and upon lines *previously established* and *built upon.*

We are, therefore, of the opinion that there was no error in the charge given by the court below, and that the cases in 8 Ohio Rep., and in 5 Ohio St. Rep., do not in any manner conflict with the charge so given and herein approved.

Judgment of the district court affirmed.

SUTLIFF, C.J., and GHOLSON, BRINKERHOFF and SCOTT, JJ., concurred.