Bentley, J.
This cause comes into this court on appeal form the decree of the court of common pleas rendered in the case. It involves the question as to whether what is called Sixteenth street between Monroe street and Jefferson street, in this city, is a public street, such that the plaintiff has the right to insist as against the defendants shall be kept open and unobstructed.
The plaintiff claims that he is the owner of lot 33, in Mott’s addition to the city, and that said lot fronts on Sixteenth street between Monroe and Jefferson streets, and is only accessible by means of that street, and that the defendants by their fence and other structures, obstruct said street and blockade the way to the plaintiff’ said lot and thus injure its value, and that their said structures are nuisances which he has a right to enjoin.
The defendant Ellen A. Coghlin does not answer, but is in default for all pleading.
The defendants Newton and Mulhenny file separate answers admitting the plaintiff’s ownership of said lot 33, but they deny that they obstruct said street, and deny that the *436 said Sixteenth street, so-called, is a dedicated or existing street. They also allege adverse possession of the parcels of land where their said respective structures are situated, in them and their respective grantors for more than twenty-one years next before the commencement of this action under said circumstances, and claim that the statute of limitations has run against the plaintiff’s said alleged right of action.
They also set up that the city has for many years taxed and assessed said parcels of land, now claimed to be a part of said street, and caused proceedings to be instituted to condemn the same for street purposes, (which were not consummated, for that the city declined to pay the damages awarded to property owners by juries in said proceedings). And Mr. Mulhenny sets up that his said parcel was sold at sheriff’s sale to pay said taxes and assessments, and that his title comes to him under said sale. And Mr. Newton pleads that the county treasurer brought suit to subject his parcel of land to sale for the payment of such taxes and assessments while it was owned by his predecessor in title, but that his grantor proved, and that the court found that he owned the ground, and that the assessments had been paid after that action was commenced. And the defendants allege that the city never accepted any dedication of any of the parcels in question for street purposes, never opened, used, improved, or occupied them for a street.
The defendants Newton and Mulhenny also file a joint amendment to their said several answers, alleging that the plaintiff is estopped from setting up that the said places in question are in a public street, for that in the year 1865,' James W. Myers and Sarah Ann Myers, under whom the plaintiff and' the said Newton each claim title to their respective parcels of land, began an action against the city of Toledo in the court of common pleas of this county, alleging that their father, James Myers, at the time of his *437 death, 1864, and for many years prior thereto, and ever .since 1845, was the owner and in the exclusive possession of a certain large tract of land, including plaintiff’s said lot and said Sixteenth street so-called and Fourteenth street and other lands, being a tract of land assigned to said James Myers in a partition proceeding in 1845; That by his last vyill and testament he devised all of said tract of land to the said James W. Myers and Mary Ann Myers, and that they, ever since the death of said James Meyers, have been in the open and adverse possession of the same and have the legal title thereto; and that the city of Toledo was about proceeding to cause said Fourteenth street to be opened as a public street, but that the city never had any right or title to said street, or if it ever did have, it had been lost by non-user, and asking that the city be enjoined from taking possession of or opening said street.
The defendants here, Newton and Mulhenny, aver that on the trial of said cause the court of common pleas, and the district court on appeal,sustained the case made by the plaintiffs in that action, and perpetually enjoined the city -as prayed for, as to said Fourteenth street, and they claim that the effect of the decision in that case applies as well to Sixteenth Street, and that the plaintiff here, as a grantee under said Myers, is estopped from making the claim he sets up in his petition herein. These are the issues.
All the lands here in question were once a part of the old Bartlett Farm so-called. That part which the defendant Newton claims, and the plaintiff’s lot 33, were included in that part of said Bartlett farm which was setoff to James Myers in the partition proceedings of 1846, whereby said farm was aparted among said James Myers, Hicks, Under-hill, Hubbard, Pratt and Taylor. That part claimed by defendant Mulhenny was a part of that which was set off to - said Underhill in said partition proceedings.
*438 ' This case involves, substantially, the same facts and questions of law as the. case of Daiber and Southard v. Scott decided by this court at its April (1888) term, and which is reported in 3 Ohio Circuit Court Reports, page 313, with the addition of the questions arising under the plea of the statute of limitations and the estoppel alleged to arise by reason of the record of the said action of James W. and Sarah Myers agaiust the city.
Except these two matters, all of the questions involved in this case must be held to be disposed of in that case, unless we should recede from the position there taken, and our further reflection but deepens ■ our conviction of the correctness of our conclusions in that case.
We hold therefore, that said Hicks, Myers, Underhill, Hubbard, Pratt and Taylor, by executing or recognizing the Gower Map so-called, by accepting each his portion of the Bartlett Farm, as set off to them respectively in said partition proceedings of 1845-6, and by their respective acts in dealing with and deeding the lands thus allotted with reference to said map, and by paying regard in their descriptions to the streets appearing on said map as public streets, evinced their intention to dedicate, and they did dedicate Sixteenth street to public uses as a street of said city.
And it is worthy of remark here in all the evidence produced before us,not one of the original proprietors thus dedicating ever manifested any disposition to question said dedication, but continuously recognized the existence of said streets,we think, in all their conveyances and dealings; and in saying this we do not forget the provisions of the will of James Myers.
We farther hold that the city of Toledo, by proper and sufficient action, accepted said dedication many years since, and that neither by causing said Sixteenth Street to be taxed or assessed for improvements, nor by instituting pro *439 ceedings to condemn it for street purposes, did the city estop itself from claiming that it was and is a public street. Such assessments were unauthorized, and the parties who paid them were in no wise compelled to do so, and by voluntarily paying them they took their chances of any subsequent assertion that said Sixteenth Street was a public street.
As to the statute of limitations: To determine whether the statute of limitations has run against plaintiff’s claim, the usual rules as to adverse possession must be applied. The statute in its present form (Sec. 4977) was passed and took effect April 15th., 1889, ten days after the plaintiff bégan this action, but whether we apply the old or the new statute, we apprehend would make no difference. The possession of the defendants, in order to raise the bar of the statute,must have been notorious and adverse for twenty-one years before April 5, 1889. This period would reach back to April 5, 1868.
Now, the question presented in this phase of the case is whether such possession as the defendants and their grantors had, was such as set the statute of limitations running; whether in fact it was open, notorious and adverse, such as would finally eventuate in giving them, in effect, the title to the lands.
We heard the testimony as to the fencing on that part of Sixteenth Street here in question, it appearing that for quite a good many years there was, during most or perhaps all the time substantially, a fence along Jefferson street and across that part of Sixeenth street; that there was a fence running from Jefferson street along lengthwise to Sixteenth street to a point about midway between Monroe and Jefferson streets, which included the lot now claimed by Mr. Newton. We think the proof fairly shows that fact, al *440 though that portion of the fence thus running lengthwise of Sixteenth street was not upon the exact center, but was southeasterly of the exact center some six or eight feet perhaps. As to the other part of the street, that which Mr. Mulhenny claims, next to Monroe Street, we think the proof shows that there has been a fence along the center line of Sixteenth street from Monroe street back as far as Mr. Mulhenny claims, only for a comparatively few years. The earliest fence there seems to have been placed upon the north-westerly line of Sixteenth street, and to have run back from Monroe street as far as Mr. Mulhenny’s lot, and that the fence which is now perhaps along the center line of Sixteenth street from Monroe Street, has not been there twenty-one years,and that there has not been a fence for many years across Sixteenth Street and along the line of Monroe Street. But whether these fences were there or not, whether they were such as enclosed the ground now claimed, would not be in and of itself conclusive in establishing the rights of the parties upon the question.
A fence or enclosure in only one element of the evidence that is necessary to establish such possession as would finally ripen into what would be, in effect, a title. This is recognized in case of Lane v. Kennedy, 13 Ohio St. 42. There a portion of the street had been fenced up for many years; there was no question about that, but there was still the further question whether the possession thus taken of a portion of a street was adverse, so that it set the statute of limitations running. The supreme court held that it was not.
There are many other decisions tending in the same direction. The main question is not whether a fence is around or upon the premises, but under what circumstances was the fence built, and maintained, and under what claim. In order to judge of that, it will be proper to notice the understanding of the parties as evinced in their deeds. We *441 consider in this connection the point that has been made by council, that the owners of that tract had already dedicated this part of Sixteenth Street; that it was a public dedication, and legally a public street of the city. Now, if after that, the dedication had ceased to be so, it must be so by such acts of the parties as would substantially annul that dedication, and vest title in the parties.
Underhill, as I said, was one of the original proprietors, and it is under Underhill that Mulhenny finally claims title to a portion of his lot, or all of it. Mr. Mulhenny and wife in 1849, after these partition proceedings, conveyed his land to John Poag. He did not originally join in the dedication,-but in 1848 he delivered the deed which contained this description, after describing the fractional part of land:
“Beginning at the intersection of ‘the center line of Monroe Street in said city of Toledo with the center of Sixteenth Street, running thence njrthwesterly along the center of said Monroe street to its intersection with the center line of Ninteenth street; thence northeasterly along the center line of Ninteenth street to its intersection with the center line of Jefferson Street; thence southeasterly, along the center line of said Jefferson street to its intersection with the center line of Seventeenth street; thence southwesterly, along the center line of said Seventeenth Street to a point where the same would be intersected by a northwesterly prolongation of the dividing line between lots 40 and 41 (so numbered on a map of said quarter-section No. 33 on file in the recorder's office of said Lucas county); thence southeasterly along said dividing line to a point where its prolongation would intersect the center line of said Sixteenth Street; thence southwesterly along the center line of said Sixteenth street, to the place of begining, and including lots 41, 46, 47 and 52 according to the map above referred to, made by Robert Gower, surveyor, together with all and singular the tenements,” etc.
So that by his deed as early as 1849, Underhill respected this street, and although the boundaries of the land con *442 veyed in^this^deed include[half¿of[Sixteenth Street we cannot, in view[of^other®provisions of the deed, conclude otherwise than that|he thereby^expressly recognized the existence of Sixteenth Street as a public[street,and Mr. Poag took it, of course, with such knowledge as the recitals in that deed gave him,
, Poag having thus obtained title, it seems, by some description which I cannot here[recite, conveyed to trustees— this title passed to some trustees: whether all his lands or simply that portion conveyed by the deeds I have called attention to, we do not know. The trustees of Mr. Poag, however, on March 30, 1862, conveyed to Augustus Thomas all the lands which Mr. Poag had thus obtained by his deed from Underhill, excepting this part of Sixteenth street herein controversy; that is, the trustees of Mr. Poag, in deeding to Mr. Thomas, conveyed all of this land of Mr. Mulhenny’s, except the very part here in question, to-wit, this half of Sixteenth street. That was in 1862.
The way that Mr. Mulhenny, who is the grantee under Thomas, finally gets what title he has to this portion of Sixteenth Street,is under proceedings begun by the treasurer of the county against the persons claiming to own Sixteenth street, from Monroe street to Jefferson street, to pay the taxes and assessments that had been levied thereon — the assessments levied by the city, and the general taxes. In that case was included the portion of Sixteenth street, then owned by Mr. Hiett, the predecessor in title of Mr. Newton. He answered in the case, and showed the court that since the beginning of the action he had paid the special assessment which had been levied upon that part of the land by the city,and also secured this^finding:
“And the court further finds that the said John W. Hiett has heretofore duly paid all the special assessments charged against his part of saic property, since the commencement of this action,, and that his part of [said property was im *443 properly charged with general taxes, and that there are now no taxes or assessments due from said Hiett’s portion of said lands, but that the above taxes and assessments are due wholly from the said Poag, Harris and Sherman’s portion of said lands.”
The other portion of Sixteenth' street however, next to Monroe street, was ordered to be sold to pay the taxes and assessments in that case, and was finally sold by the sheriff to Curtis and Gloyd, the executors of Thomas. They bid it off at sheriff’s sale in 1881, and by their deed of 1884 conveyed it to the defendanCMulhenny. He gets his title therefore in that way, through the medium of that public sale, through Curtis and Gloyd, to the portion of Sixteenth street which he now claims.
He had purchased at the partition proceedings, instituted by the Thomas heirs, the other portion of the lot to which this part of Sixteenth street is, as he claims, attached. The' proceedings in partition among, the Thomas heirs, which resulted in an order by the court to sell the premises and which were bid off by¡Mr. Mulhenny at sheriff’s sale, included this description:
‘‘That part of the southeast fractional quarter of section 35 town 9 south,range 7 east,Lucas county, Ohio commencing on the northeasterly line of Monroe street where said line of Monroe street would be intersected by a continuation of the northerly or northwesterly line of Sixteenth street, should said Sixteenth street be extended across said quarter section; thence in a northerly or northwesterly direction along said northeasterly line of Monroe street, a distance of one hundred feet, to a point midway between said northerly line of Sixteenth street if extended, and the southerly or southwesterly line of Seventeenth street; thence extending in a northerly or northeasterly line, at right angels, from Monroe street to a point midway between Monroe and Jefferson street; thence in a southerly or southeasterly direction on a line midway between said Jefferson and Monroe streets, to the northerly or northwest *444 erly line of Sixteenth and Monroe streets, to the northerly or northwesterly line of Sixteenth street, if extended through said section.”
Thus excluding from the description this part of Sixteenth street in question; that is, in that partition proceeding by the Thomas heirs, that part of the land in this Sixteenth street was not included, was not ordered partitioned, and was not sold by the sheriff.
As to the other portion or part of Sixteenth stieet in question, now claimed by Mr. Newton, it is well to see what the character of the parties’ possession was, so far as evinced by their deeds in later years. In 1870 the devise of James Myers, one of the original proprietors, deeds to Mr. Hiett, who afterwards deeds to Mr. Newton, the deed from James W. Myers to John W. Hiett containing the following description:
‘‘Commencing on the southwesterly line of Jefferson street at a point half of the distance between the center line of Sixteenth and Seventeenth streets extended, and running thence southwesterly on a line parallel with the center line of Sixteenth street extended, to a point half of the distance between said southwesterly line of Jefferson street and the northeasterly line of Monroe street; thence southeasterly, to a line parallel with Jefferson street to the center line of Sixteenth street extended to the southwesterly line of Jefferson street, thence northwesterly along said last mentioned line to the place of beginning; said premises being a part of subdivision number five of the east half of the southeast fractional quarter of section number thirty-five aforesaid, set off to James Myers, in his lifetime in a partition proceeding, had between the owners of said half-quarter section; the premises hereby, conveyed being subject to all taxes,” etc.
That is, that while that said deed made, in 1870 by Jamse W. Myers, recited the boundaries upon Sixteenth *445 street, as the lines of “Sixteenth street extended,” nevertheless, it refers directly to these partition proceedings of 1845-6, as to the meaning of the descriptions, showing the intention to convey the same lands by and in which said partition proceedings, Sixteenth street to the full width was recognized as fixed, and the boundaries of the very land in question were described by name. So that it seems to us that the mere use of the term “extended,” regarding the lines of Sixteenth street, in the same deed where these partition proceedings are fully recognized, does not indicate that, at that time, Mr. Myers was claiming adversely to any person regarding that street, or that he intended by his deed to convey any right as had been by him, up to that time, obtained by adverse possession, as now claimed by the defendant Newton.
Mr. Hiett, in 1879, conveys, by similar description, to • the defendant Newton; but while Mr. Hiett owned it and was keeping up some of the fences which were claimed to indicate adverse possession, he gave a certain mortgage to the Connecticut Mutual Life Insurance Company on a portion of this land, and described it as follows:
“A piece of land on the west corner of Jefferson and Sixteenth streets in the Vistula Division of the city of Toledo, beginning at said west corner, and running thence northwesterly along the southwest side of Jefferson street one hundred feet; thence at right angles with Jefferson Street, southwesterly two hundred feet; thence southeasterly to the line of Sixteenth Street, thence northeasterly to the place of beginning, being part of lot number forty as marked on Marston’s map of Toledo, and as made by Declan Allen, assessor, and recorded in Volume Second A of Lucas County Plats, page 43.”
The possession of Mr. Hiett of this land, now called in question, must be established by Mr. Newton in order to make' out adverse possession, which he claims to have run for twenty-one years. While Mr. Hiett was the owner of *446 the title to this land — having whatever fence he did have there — he made this mortgage, wherein he recognized Sixteenth street as an existing street at that time, nothing being said about its being extended, and it would be difficult for us to find that Mr. Hiett, when he made that mortgage, was claiming that, where his fences were, he was holding — as against the city, and everybody else who would claim that as a public street — that Sixteenth street was not a public street — that he owned it as private land.
Mr. Myers, long after 1865-^-being in 1883 — owned lot 33 which the plaintiff now owns, and mortgaged that, and a large number of other lots and other lands, to Valentine H. Ketcham. In the description of that mortgage, he conveys:
“Also, lots number one, five, twenty-three, twenty-four, twenty-five, and thirty-three in Mott’s Addition to the city of Toledo according to the Gower map.’’
Now, these lots appeared upon the Gower map, and it was impossible to locate them, except with reference to the Gower map. They were located, some of them, upon this street in question: this lot No. 33, as I said, being the plaintiff’s lot, bounding and abutting upon Sixteenth street. There was no possible access to it over or through any public street, except along Sixteenth street, between Jefferson street and Monroe street.
Now, we think the evidence in connection with this deed abundantly shows, wherever these fences were along the line of Sixteenth street,it was not designed by the owners at any time during the period of twenty-one years, that they should hold the possession indicated by these fences as against the city, or as against the public, or as against the lot owners in the same addition to the city, but that their possession was in fact in line with the presumptions which, without testimony, would ordinarily obtain, viz: that their possession was subservient to the rightful title wherever it *447 might exist. We think the proof does not sustain the allegations in the defendant’s answer as to the twenty-one years adverse possession.
We come now to the other question which was not involved in the former case of Daiber v. Scott; and that is, the effect of this record in the case brought by James W. Myers and his sister, against the city of Toledo, to enjoin it from opening Fourteenth street. That action was brought in 1865, it would seem, and resulted in a finding and decree in favor of Mr. Myers and his sister. There was no person made a party defendant to that proceeding except the city of Toledo. The only thing sought by it was to enjoin the city of Toledo from opening Fourteenth street, and while in the description of the land which they claim to own in this petition, they describe it as including the part of Sixteenth street in question, yet we apprehend that in no event could an estoppel arise from that case to any person, to any extent further than that which was included in Fourteenth street so-called. We doubt very much whether that record would even estop the city as to any other street except Fourteenth street so-called,notwithstanding the averments in the petition, which in general terms the court found perhaps to be all true. We think that estoppel would not apply here, even if this plaintiff had made out his case, by virtue of the right which the oity might have to open Sixteenth street; but we think the plaintiff is not necessarily driven to that; that is, that circumstances might exist which would estop the city of Toledo from operating and claiming it as a public street, which would not estop the private owners of any of the lots in that addition.
As briefly referring to this point which I am now considering, I call attention to the case of Segur v. Harrison, in 25 Ohio St. page 14, and will read a little from the opinion of the court, on page 20. After reciting a contract *448 between the parties in the case, whereby a certain street should be dedicated or opened, and in reference to which a fence had been made by them, the court say: .
“Under these circumstances, it seems to us, in the absence of fraud or mistake, the agreement ought upon well-established principles of equity, to be enforced, whether the public authorities accept the street as dedicated to public use or not. When the street is opened, the public will have the right to use it, and the proprietors who are parties to the agreement for its establishment, have the right to insist upon affording the public the opportunity of using it.”
In support of the doctrine there spoken of, the court alluded to a case found in 5 Seldon, from which I read from page 257, being the case of Child v. Chappell. Judge Morris says, in the course of his opinion:
“Where an owner of land lays it out in lots and streets, and exhibits the streets upon a map by which he sells and conveys lots so laid out, as between him and the purchasers of such lots, the spaces so laid out upon the map, as streets are dedicated as such to the public use. This I understand to be the law, and in conformity to the principles of natural justice. The mere act of selling, and conveying by such a map binds the grantor to permit the land so laid down as streets, to be used as such. As between the parties, their heirs and assigns, it fixes the servitude of a public way upon the land thus laid out as streets. It is perhaps unnecessary now to consider whether such a grant as between the grantor and the public, would be a dedication. I think it would not,”
By this dedication End recognition of the Gower map, and the streets, etc. laid down upon it, and the conveying of property with reference to it, we think Mr. Myers and his grantees have shown as plainly as could be, by deed, that they were bound to regard this Sixteenth street as a public street in the village, and that whenever they should convey lots bounding and abutting upon it, their grantees would have the right to insist, as against them and all those *449 bound by their acts, that this was in fact a public street,and that the public would have a right to use it whether or not the public had accepted it, or opened it, or improved it.
Now, it is said that Mr. Myers being the grantor of Mr. Newton’s grantor, and the plaintiff also claiming under Myers, that this suit which Myers instituted against the city, estops him any way from claiming under Myers. We cannot see on what settled principle that can be urged to result. Mr. Myers brought suit against the city as to Fourteenth street, and he prevailed as against the city. We hardly think that in that case, where the city alone was defendant, the estoppel arising between him and the city became a muniment of title to his grantee of this land now claimed of Mr. Newton, so that it could be urged by any subsequent grantee of Mr. Myers of any other lot in this addition.
Whatever Mr. Myers might have done in 1865, he after-wards abundantly recognized the dedication of these streets, as we think. He mortgaged to Mr. Ketcham this lot 38. It was afterwards sold by the sheriff, and the plaintiff became the purchaser; and we think, under these circumstances, it cannot be urged that, whatever the effect of that' former action was between Myers and the city, the plaintiff is estopped from claiming that this is a public street. It was not within Ihe power of Mr. Myers, after this street was dedicated and recognized, by private contracts between himself and any other individual, to have estopped his grantees of other lots from insisting upon the rights which they otherwise would have as to this street.
In some of these deeds Mr. Myers conveys the lots by lot numbers. They could be located only by reference to this plat showing these streets; and yet he proceeds to also convey the land adjacent to these lots, and which constitute a part of these streets. We think that it cannot be said to clearly evince an intention upon the part of the grantor, by *450 said deeds, to claim to possess that portion of the street adversely. As a matter of precaution in such a case, it would be well for a grantee of a piece of land bounding and abutting upon the road to procure the legal title to the land covered by the street, so that in case of vacation of the road, or if otherwise the question should arise, the title would be in him.
In our view of the whole case, and as we find the facts to be, the decree of this court must be in favor of the plaintiff, and that the defendants be enjoined from continuing their structures, or obstructing said part of Sixteenth street; and that the costs of the action be paid by the defendants.