King, J.
The amended petition of tbe plaintiff in this case sets forth that he is the owner and in the actual possession of certain premises, which he describes; that the defendant sets up and claims an interest in said real estate adverse to the plaintiff. The premises are described as 33 feet in width fronting on Jefferson street, and running back from Jefferson street about 140 feet. The petition alleges that the defendant claims that the property in question is a part of Fifteenth street, and is the property of the defendant for street purposes; alleges that it is not a part of Fifteenth street;- that the defendant has no interest in the property, and that the same is the private and exclusive property of the plaintiff, and that the plaintiff and those under whom he claims have been in the actual, open, notorious, continuous and adverse possession of the premises for 25 years next before the commencement of this action; that if the defendant ever had any interest in the premises, it now has no right or interest therein, and its claim thereto is null and void. The plaintiff claims that his title may • be quieted.
The answer of the defendant denies the title of the plaintiff, and claims that this property in question is a part of Fifteenth street, being a street which runs at right angles with Jefferson street.
*3 The facts in this case are somewhat voluminous;and cover quite a period of time and considerable record evidence; but this evidence and these records have been submitted to this court in three other cases, in which decisions were rendered, and those decisions cover and embrace many of the points made in this case, so that it will be unnecessary for me to repeat what has been said in those other cases, so far as the same is applicable to this case. But in some features this case is different from any of the others before the court. In 1837 certain persons were the owners of a tract of land in this city which was undivided. Among them, Hiram Pratt and William E. P, Taylor owned an undivided one-sixteenth part of the tract. The owners undertook about that time to make an agreed partition among themselves, and certain of' them made deeds, and among others, there was deeded by one of these owners, James Myers, to Pratt and Taylor, the owners of one undivided sixteenth, certain lots by numbers. These lots they said in that conveyance, were deeded by numbers as described on a plat of said tract recorded in the recorder’s office of Lucas county, in Vol. 2, page 510; and the lots in the tract of land known as the Bartlett farm, constituting part of this tract,'are numbered in the conveyance 13, 2c, 56, 70 and 75. Other conveyances were made to other parties, the purpose of all of these being a partition of the property. The map referred to as having been recorded in Vol. 2, page 510, was not so recorded. The page referred to is blank, A copy or a tracing of that map is presented here in evidence. I think it is cjuite clear from the evidence that on or about the time when these deeds were made, this map, if not recorded, was placed on file, or placed within the recorder’s office, where it has remained ever since. So far as Pratt and Taylor are concerned, who were the owners, as I have stated, of an undivided one-sixteenth of this property, they, in 1840, mortgaged the lots which I have named, together *4 with some other property, to Charles H. Alley, president of the Bank of Commerce of Buffalo, to secure 1100,000, in a mortgage which, among other things, describes these lots by numbers; and it contains this language:
“All those certain lots in the Port Lawrence Division of Toledo, Lucas county, in the state of Ohio, which are designated on a map of said division in the office of the recorder of said Lucas county.’’
Following the description until it comes to the particular lot in this tract of land known as the Bartlett farm, it says:
“Also part of that part of Toledo aforesaid, and being part of the southeast fractional quarter section thirty-five, in township nine, south, of range seven, east, being part of the Bartlett farm, so-called, and which is designated on said map as lots numbers 25, 56, 70 and 75.’’ •
The evidence, I think, shows the inability of these persons to make an amicable partition of this property, There was, however, about the year" 1837, another map of this entire tract of land made. The county surveyor of this county appointed one Robert Gower to make a survey of the lots and lands in Toledo, and such a survey was made by Gower in 1836 and 1837, and that map is known in conveyances and otherwise as the Gower map. That divided this Bartlett farm into lots the same as it divided all the rest of the territory, and numbered them, and upon theGow'ermap was laid out the streets which cross these tracts of land in both directions, and there is upon it Jefferson street, and Madison street, parallel, and there are Fourteenth, Fifteenth and Sixteenth streets marked upon the plat, and the land between these sheets is laid off into lots and numbered. So far as that portion of the map referred to in the partition proceedings is concerned, the numbers of the lots agree with those on the Gower map, and their locations are identical, as are-the streets laid out; that is, upon that part of .the map called the Bartlett farm. This Gower map, I should *5 say, was never recorded until 1876. There is no evidence that it was; but it is evident that it was on tile in the recorder’s office ever since it was prepared — certainly since the year 1840. This Gower map, it seems, is not the one referred to in the deeds made in pursuance of the partition, but in 1840 it was acknowledged by several of the owners of this property, and among others, Messrs. Pratt and Taylor, who made this mortgage, appear to have signed and acknowledged it. The acknowledgment shows that it was certified to in October, 1843, and it recites that Pratt and Taylor, by their authorized agent, had actually seen the map and signed it in January, 1840, but acknowledged it up to the latter date.
This mortgage was foreclosed in 1845, and the property was sold under foreclosure proceedings in 1846, and the title to the subsequent holders of the property grows out of that foreclosure procéeding. When they came to foreclose the mortgage upon this property, it was found that this partition •had never been carried out, as some of the owners of the property had never executed deeds, and there was no actual partition of the property; that although Pratt and Taylor were-the owners of an undivided one-sixteenth of the whole, still they hadn’t the whole'title to the lots described in the mortgage; and the court, without an issue made up for that purpose, proceeded to correct the mortgage, and to decree that it should cover, instead of all the lots named in the mortgage, the undivided one-sixteenth of this entire tract of land owned by Pratt and Taylor, and that one-sixteenth was ordered to be sold in that proceeding.
It is now argued that since this Gower map, upon which these streets were laid out and these lots numbered and set forth, was not acknowledged until October, 1840, by Pratt and Taylor, and they had conveyed their interest in the premises by a mortgage, all but the equity of redemption, in April of that year, that they could not by an acknow *6 ledgment upon this map dedicate any portion of that property for street purposes so as to affect the interest' of the mortgagee. It is a sufficient answer to that, it seems to me, to say that the mortgage by its description covered certain lots of land that it is conceded do not touch upon Fifteenth street at this point, and are not near the lot of land here in litigation. It did not purport to convey the undivided one-sixteenth part of that property, and it never conveyed , the one-sixteentli part of the tract until the decree of the court was made in 1845, purporting to correct the description. Tt has been held that a mortgage does not take effect as to third persons until it is recorded. I cite 10 Ohio St. 159; 1 Ohio St. 110; 26 Ohio St. 474; and a number of other authorities may be cited to support that proposition. This mortgage, when it was originally made, covered lots 25 etc; when corrected, it covered the undivided one-sixteenth part of this property. But the correction was in 1845. The Gower map was acknowledged, as it was conceded, in 1840, and thereafter it became a part of the re- . cords of this county. It was not actually recorded until 1876, but it was on file in the office of the recorder, and as it clearly set forth this property, and was actually executed, signed, and acknowledged by the owners of the very property or of the interest in the very property that is here in controversy, it must be true that they were bound by it. It was also by resolution of the city council duly accepted, so far as the streets are concerned
But this is only a part of the evidence in this case. This property passed through various proceedings that I need not refer to. There was a partition proceeding in court, and the interest of Pratt and Taylor came into the name of Jesup W. Scott, and he conveyed this land to Ezra Bliss by a deed dated October 30, 1849. The lot owned by the plaintiff in this case, is numbered upon all these maps as lot 6 of Mott’s addition, and is a part of this original tract. *7 It appears to be bounded on the Gower map by Fifteenth street and Jefferson street on two sides. This conveyance purported to convey from Scott and wife to Ezra Bliss, a number of different lots,and among others,lot 6,the description reading, “also lot six of Mott’s addition, adjoining lot 1570.’' Then it proceeds as follows:
Lots 1645 and 6 not having been legally laid out by their owners, as is believed, extend to the middle of 14th street, loth street, and Jefferson street extended; the five lots first named above named- are bounded by 14th street, Madison street and 15th street of the Gower map, as adopted by the city, and the other two as above stated by 14th, 15th and Jefferson streets if extended on their middle lines respectively
Here is a distinct recognition by this owner of the Gower map. He describes all this block, and bounds it by the streets that are laid out upon it. WLen he comes to lot 6,’ he simply expresses the opinion that these lots are not legally laid out. Why that is so the deed-does not state. They are laid out by precisely the same proceedings and the same plats as axe all the other lots. And Pratt and Taylor, through whom this property came by virtue of 'this mortgage and otherwise, executed this map, and recognized it, and made their dedication upon it. Scott recognizes the máp and the streets upon it, but expresses the opinion that these two lots were not legally laid out; and therefore it is his opinion that they extend to the middle of the streets that bound them. This opinion conveys no title to the streets in question, and is of no importance.
Later on, Ezra Bliss conveys some of this property to George Roberts. The date of that conveyance is in 1861. And he describes the property as bounding on all these streets — Fourteenth, Fifteenth and Jefferson, “The premisés above described being the same premises-contracted to be sold by me, the said Bliss,to said Roberts, July 25th, A. D. 1857, and now conveyed in pursuance of the agreement in said *8 contract contained, together with allj the privileges and appurtenances to the same belonging.” This conveyance does not describe this lot by number, but by metes and bounds,and it bounds this lot by the easterly line of Fifteenth street extended, and the northern line of Jefferson street extended. These two streets it would appear from that description were not yet opened,as he speaks of their lines extended as passing along and forming two of the boundaries of this property. Having gone around this property and described it by these bounds,he says: “Also all my right, title and interest in and to the land lying between the northwesterly side of the above bounded and described premises, and the center of Fifteenth street extended, ’ That deed was made in 1861. He did not assert in the deed that he owned a single foot of the land included in Fifteenth street. He bounds the land which he clearly did own by metes and bounds which are definite, precise and easily ascertainable, and mentions these very streets laid out on this map, and then says that he conveys all his right, title and interest in and to the street adjacent to the north-westerly side of the lot, being tlm 38 feet next adjoining. We do not think that this conveyance conveyed to Mr. Roberts any land in the street. To say, “I con rey to you all my right and title to any one of these streets”,absolutely conveys nothing whatever unless he owned it. His grantor did not undertake to claim, and did not sayr by his conveyance, that he owned any of the street, but he, casts a doubt upon the laying out of the33 lots, and for that reason he thinks they extend to the center of the street; an expression of no consequence whatever.
I need not go any further over that part of the case. We are clearly of opinion that the evidence in this case certainlyjjshows that the plaintiff here under these conveyances acquired no title to any part of the land within the limits of Fifteenth street, as shown upon the Gower map; and by the *9 acts of his predecessors, is clearly estopped from disputing the legal dedication of that street. Everything the law required the city to do,it did, to accept the dedication of this property for these streets. It is held by the council for such purpose, unless they have lost it by reason of adverse possession. On that subject the proof in this case is a little different from that in the other cases. There is no evidence in this case that we have been able to discover in looking over this testimony, that shows that the plaintiff is in possession of this property, or was at the time of the commencement of this suit. But his predecessors in title have had some possession of it. There is no doubt rhat there has been a greater part of the time a fence along on Jefferson street, and that there was a fence somewhere near the middle of Fifteenth street, running back to the Territorial Road, so-called, and that there was also a fence along the Territorial Road; but the evidence is exceedingly indefinite and indistinct as to whether those fences have been maintained continuously during twenty-one years next preceding the commencement of ibid action. Notwithstanding the fact that Mr. Roberts testifies that he kept up the fence there,and that there was an old fence there when he went in possession which he kept up, the evidence is plain, and positive, and distinct, that people were driving through, either on one side or the other of that center fence running down Fifteenth street these years. The evidence is that they were driving on the east side of it part of the time; and I think that there is evidence showing that they were driving on the west side — driving on the Scott property, next to it. We have in the later decisions of the courts of Ohio, especially in 13 Ohio St. 42, decisions that such a' possession would not give title to the plaintiff as against the city. And this court has held the same in a case almost as strong, relating to one of these streets. There does not appeur anything in the testimony of Mr. Roberts to show that by his *10 occupation and possession of the property he was intending to assert his title to it and deprive the city of it. He went there and found this property fenced as it had been, with an old rail fence, and he used it just as it was fenced, and he finally improved the property. He put up a new brick house in place of the frame one first there, and he kept the lot up, but he allowed this fence to go into decay,and it became out of repair, until it seems clear that citizens traveled through there back and forth along Fifteenth street at this place at will — perhaps not as regularly as they do now, but as often as they wanted to.
C. W. Everett and C. S. Ashley, for Plaintiff.
C. W. Watts, H. A. Marill, and J. H. Tyler, for Defendant.
So we do not think that the plaintiff has made out a case showing that he has acquired title by adverse possession.
Therefore the petition of the plaintiff will be dismissed.