Gorman, J.
This is an action brought by the county commissioners of Hamilton county, Ohio, against the Cincinnati, Hamilton & Dayton *130 Railway Company, in their official capacity, asking for a mandatory injunction against the defendant, perpetually enjoining it from maintaining certain abutments of solid stone construction and earth embankments behind said abutments- within the limits of the Springfield pike where the same is crossed overhead by the defendant’s railway near the southwest corner of the village of Hartwell, which pike is claimed to be a county road and a public highway, and sixty feet in width, but which abutments at the point aforesaid, encroach on either side of the roadway, leaving a space of but about twenty-five feet between the abutments for the traffic; and the plaintiffs further pray that a mandatory order issue to the defendant requiring it to remove said abutments and embankments from within the limits of said roadway.
The defendant by its answer admits that the Springfield pike is one of the public roads of Hamilton county and that its railway crosses the same overhead; and that there are abutments and embankments where its said railroad crosses said highway, and that the character, location and dimensions thereof are as set forth in the petition. But it denies that said Springfield pike is or ever was sixty feet in width as alleged in the petition; and it denies that its said abutments and embankments are within the lines of said highway. It admits that the county commissioners aforesaid have by resolution declared said abutments and embankments a nuisance and ordered the defendant to remove the same, but that it has refused to comply with said order.
For a second defense the defendant sets up that said Springfield pike, at the place where its railroad crosses the same and north and south thereof, was at all times owned by the Hamilton, Springfield & Carthage - Turnpike Company, a corporation for profit under the laws of Ohio, until the — day of September, 1897, on which date, by virtue of the authority of an act of the Legislature passed April 21, 1890, it abandoned all that part of its said turnpike south of Wyoming avenue in Wyoming village, including that part thereof which is crossed by defendant’s railroad at the southwest corner of the village of Hartwell, and that since said abandonment of said turnpike the same has been an abandoned turnpike road and that the public’s rights therein are limited to the rights formerly held and possessed by said *131 turnpike company at the date of the abandonment, and that at that time the said turnpike company had no right or title to that land upon which rests said abutments and embankments, because said abutments and embankments had been placed there and had been maintained in the self same places by the defendant openly, notoriously, continuously and adversely, in the possession of the defendant for more than twenty-one years prior to said — day of September, 1897, and that defendant has at all times since said — day of September, 1897, the date of said abandonment, had the legal right to maintain said abutments and embankments in the same position where they now are and were at the time of the filing of the petition.
By reply the plaintiff denies that said Springfield turnpike was at all times prior to September —, 1897, owned by said turnpike company; but avers that the part of said turnpike referred to in the petition and within the lines of which said abutments and embankments stand, was formerly a state road, and that said turnpike company, a corporation, was granted a franchise therein and right-of-way to use the same as a toll road, by act of the General Assembly in or about the year 1840; and that thereafter until the abandonment thereof, about the year 1898, said turnpike company continued to use the same as a toll road. The plaintiff further denies that the defendant has any right or title to the land upon which its sai’d abutments and embankments stand, by adverse possession for more than twenty-one years.
The cause was heard by the court, both parties producing their evidence to maintain their respective claims. From the evidence adduced and the admitted facts, the issues of fact as to the character of this highway, its width, when it was opened for public travel, how it was used and to what width, its width between the fences, its reputed width and the time when the railroad’s abutments were constructed and its embankments placed behind the same, have been determined.
The evidence to establish these facts consisted of plats and records from the offices of the county recorder, the county auditor and the county surveyor; the oral testimony of individuals who testified to the width of the pike between the fences, and the traveled portion thereof as far back as gixty-two years; and *132 the oral testimony of witnesses who have been well acquainted with this highway for from thirty to sixty-two years, that its reputed width has been sixty feet; also private plats of individuals more than fifty years old showing the width of this road, surveys made by surveyors and engineers showing the width of the road to be sixty feet or more. The record of this road as shown by plats, surveys, deeds or other evidence of title, if it ever existed, was destrojmd in the court house fires, there having been two of such fires since this road was opened for public travel prior to 1840.
Without undertaking to review and analyze the evidence ad-, mitted, much of which was admitted over the objection of counsel for the defendant, the court is satisfied'that the evidence does establish the fact that this turnpike is and has been for the past sixty-two years at least, and probably always has been — at least sixty feet wide between the lines of its right-of-way, although the traveled macadamized portion thereof has not been more than twenty-five feet. Its reputed width has been established by oral evidence to be sixty feet. The blue print of defendant which was given to the auditor of the county and may be treated as an admission against interest, shows the width of this roadway immediately adjoining the railroad company’s right-of-way on the north and on the south, to be sixty feet. The property lines adjoining and abutting on this highway north and south of the railroad have been shown by engineers to be thirty feet or more from the center of the roadway on either side, and the center line of the turnpike is the section line between Sections 1 and 7, Springfield township.
It is admitted that at the time this action was commenced this turnpike was a public road, and when there is added to the weight of the evidence tending to establish its width as of sixty feet, the presumption of the law, created by Section 7515, General Code (Section 4935c, R. S.), which lays down a rule of evidence applicable to lost road records, the court believes that the conclusion arrived at that this road is sixty feet in width has been materially strengthened. That section in substance provides that all country roads whose records have been lost or destroyed and not reproduced as provided in the preceding sections of the statutes shall be prima facie sixty feet in width. An addi *133 tional circumstance in favor of the belief that the road is and was sixty feet wide is the fact that the turnpike company’s charter authorized it to pre-empt and take a roadway sixty feet wide (see 32 O. L. L., 157; 36 O. L. L., 222, and 37 O. L. L., 241). Furthermore, Section 9235, General Code (3477, R. S.), provides that turnpikes and plank roads shall be opened not more than sixty feet wide and at least sixteen feet thereof shall be improved with stone, gravel, wood or other convenient material. In view of these matters and the absence of any evidence tending to show the width of this roadway to be less than sixty feet; and in view of the fact that it is now and has been for many years sixty feet wide immediately to the north and south of the defendant’s' railroad, the court feels amply -justified in concluding that the probabilities are that this roadway was sixty feet wide in 1850, when the defendant built its abutments and filled in its embankments partly within.the lines of this highway, encroaching thereon about seventeen and one-half feet on each side of the roadway, and thereby excluding the public from the use of more than one-half of this roadway at the point where these abutments were erected.
It appears as a fact that the defendant company constructed these abutments substantially as they now stand in the exact places where they now stand and that the embankments behind these abutments on both sides of the roadway have been used, owned and in the continuous, open, notorious and uninterrupted possession of the defendant under a claim of right from 1850 down to the present time.
Now the issue of fact, and I may say the only issue of fact in this ease, is the width of this roadway — not the traveled width but the width owned, taken or which the public has and had the right to occupy and use. ' If then it be established as a fact or admitted for the purpose of argument that at the time the defendant company placed its abutments and embankments within the lines of this highway the width thereof was sixty feet and that defendant has maintained them therein for more than twenty-one years (which fact is undisputed), has the defendant company acquired thereby a good title by adverse possession? Or, to put it in another way, is the county through its commissioners barred from recovering possession of the parts of the *134 roadway occupied by these abutments and embankments because of Sections 11219-11220, General Code (4977-4978, R. S.), which limits the time for the commencement of actions to recover the title or possession of real property to twenty-one years after the cause of action accrued?
It is contended by the plaintiffs that the statute just cited does not run against the state or any subdivision of the state as to the public roads or highways which are held not in a proprietary capacity, but in a governmental capacity. On the other hand it is claimed by the defendant that even though it did place its abutments and embankments within the limits of this highway, this was done in 1850 or 1851 openly and notoriously, and at that time this highway or turnpike was a toll turnpike owned and .operated by a private corporation — the Hamilton, Springfield & Carthage Turnpike Company — for profit, and that these abutments and embankments continued in the same place so long as this company owned and operated this toll turnpike down to 1897, or for a period of forty-six or forty-seven pears; and that the statute of limitations does run against this private company to the same extent and as fully as it runs against a natural person or a private corporation having no public franchise; and that the defendant’s title by adverse possession was good as against the plaintiff’s long before this turnpike was abandoned in 1897 or 1898, and that upon the abandonment thereof the county and the public acquired only such title to the roadway as the turnpike company had at the date of abandonment.
Now it is generally if not universally held, that the statute of limitations does not run against the sovereign — the state — nor can any one acquire title to the sovereign’s property by adverse possession. This appears to be the rule in Ohio. Seely v. Thomas, 31 O. S., 301-308; Green Tp. v. Campbell, 16 O. S., 11.
' And it has been established by numerous decisions in this state that the statute of limitations does run against the divisions of .the state, such as counties, townships, school districts and municipalities, in all. matters touching their proprietary or private interests and possessions, as. distinguished from their governmental interests or public interests or possessions; and as to such interests or possessions there appears to 'be a conflict of authorities.
*135 The matter under consideration is a public road or highway and the county’s interest therein and that of the plaintiffs, as commissioners thereof, is governmental or public as distinguished from its private or proprietary interests. It will therefore be unnecessary to consider or cite cases and authorities which apply to the private or proprietary capacity of the subdivision of the state; but only such authorities need be considered as relate to the public or governmental capacity of the municipality, township, school district, or county as are affected by the statute of limitations. And on this phase of the law applicable to the case at bar it is scarcely necessary to go outside of Ohio to determine the rule to be applied to the running of the statute against the public.
Perhaps the earliest decision in which the Supreme Court considered the application of the rule “nullum tempus occurrit regi” is that of Lessee of Cincinnati v. First Presbyterian Church, 8 Ohio, 298-310, in which the court held that the statute of limitations ran against the city of Cincinnati, a municipal corporation, as to certain town lots dedicated to it by the founders of the city and given for public use. A church was erected on these lots and after a lapse of twenty-one years the church claimed title to the lots by adverse possession, or that the statute of limitations barred the city from recovering the lots.
It seems to the court that these lots were not held by the municipality in its governmental capacity as the streets might be held, and that the ruling in this ease may be considered as applicable to property held by the city in its private or proprietary capacity. No authorities are cited by the court to sustain its ruling in the case.
The next case is that of Evans v. City of Cincinnati, 5 O. S., 549, where it was held that the statute of limitations applied to an encroachment on one of the city’s public streets (Main street), and that municipal corporations are subject to the operation of the statute of limitations in the same manner and to the same extent as natural persons. This doctrine the court said on pages 602 and 603, it adopted from the case of Lessee of City of Cincinnati v. First Presbyterian Church, 8 Ohio, 298.
But this doctrine can scarcely be claimed to be the settled rule of law now applicable to municipalities, and especially to eoun *136 ties. Evans v. City of Cincinnati is cited and commented upon, as in view of later decisions by the Supreme Court we shall presently have occasion to point out.
Since this decision, the Supreme Court and other courts of our state have manifestly been tending away from the rule there laid down and toward the rule holding that the statute does not run against the public or any subdivision of the state whenever the public highway or roads are involved.
In Lane v. Kennedy et al, 13 Ohio State, 42, the court held an encroachment upon a township road (in Oxford township, Butler county) by fencing in a part thereof and occupying it for a period of twenty-one years would not bar the public authorities from recovering the land thus enclosed if the necessities of public travel thereafter required it. The Evans case was cited and commented upon by the court in this case. On page 48 the court says in commenting upon the effect of encroaching upon a part only of the highway:
“It must be borne in mind that in the case at bar, the road was not closed up and the public thereby excluded from the use of the street.”
In McClelland v. Miller, 28 O. S., 488, it was held that the enclosing by a hedge of a part of the untraveled portion of a public road, and the continuous and uninterrupted occupation of the enclosed portion thereof for twenty-one j'-ears, would not bar the public authorities to recover the enclosed portion of the public road.
In Little Miami Railroad Company v. Commissioners, 31 O. S., 338, it was held that the fact that a railroad company had erected abutments for its overhead crossing of a public road (as in the case at bar) within the limits of the highway but outside the traveled portion thereof, and had maintained them there con-tinuously for a period of twenty-one years, was not a bar to an action of the county commissioners to compel their removal and recover possession of that portion of the public road upon which the abutments stood. It was there held that such structures, erected and maintained in the public highway, invaded rights both private and public and clearly constituted what in law is denominated a public nuisance. On page 349, the court in commenting on the Evans case, 5 O. S., says:
*137 "I am aware that it was held in The City of Cincinnati v. Evans, 5 O. S., 594, following the Lessee of the City of Cincinnati v. First Presbyterian Church, 8 Ohio, 298, that the statute of limitations runs against a municipality as fully as against natural persons, and that the question of title by adverse use tó a small margin of a public street was involved in that controversy. Notwithstanding this, the ease can hardly be held to maintain the doctrine contended for by the plaintiff in error here. It was not there intended to sanction a doctrine so palpably at variance with the whole current of authority.”
The doctrine contended for was that, although these abutments were obstructions, encroachments and nuisances in the public highway, nevertheless, by maintaining them therein for a period of twenty-one years the railroad company thereby acquired the right to forever maintain them there as against the county commissioners.
In Heddleston, Supervisor, v. Hendicks, 52 O. S., 460, it was held that the right of an adjacent land owner to enclose by a fence, however constructed, a portion of a public highway, can not be acquired by adverse possession, however long continued. This rule was applied to a township road and the court in deciding this case ¿gain referred to the Evans case, 5 Ohio State. The court says on page 465:
"The general rule is that the statute of limitations does not apply as a bar to the rights of the public, unless expressly named in the statute; for the reason that the same active vigilance can not be expected of it as is known to characterize that of private persons always jealous of his rights and prompt to repel any invasion of them. But in the case of The City of Cincinnati v. First Presbyterian Church, 8 Ohio, 298, and of The City of Cincinnati v. Evans, 5 O. S., 594, a different rule was applied. * * * But these cases are regarded as exceptional; and confined to municipal corporations in eases where their possession has been disturbed by the erection of large and valuable structures under such circumstances as precluded the idea that the encroachment was simply permissive on the part of the municipality."
In the case of Lane v. Kennedy, 13 O. S., 42, the court on page 49 commenting on the Evans case, says:
"The decision might with equal, if not greater propriety, have been placed upon the ground of an estoppel in pais on the part of the city authorities; the 'building having been located by the *138 city surveyor and upon lines previously established and built upon.”
In the case of L. S. & M. S. R. R. Co. v. Elyria, 69 O. S., 414, the railroad company was required to remove its abutments from a public street of the municipality where they had been maintained for a period of thirteen years under a contract or agreement with the council of the municipality -to erect and maintain them there. The court in deciding the case held that neither the grant from the municipality, nor the statute of limitations, could be invoked to enable the railroad company ,to maintain these obstructions in the highway. On page 435, the court says:
“As to the plea of the statute of limitations made in the answer, it is sufficient to say that it is the well settled law of this state that encroachments upon a public highway never ripen into a title by adverse possession, nor is such title plead in this case."
It is fair to assume that if it had been pleaded the court would not have sustained the plea in view of the above quoted language and the other authorities to the same effect. We do not think it necessary or instructive to cite authorities on this point other than the decisions of our own courts.
In some states it is held that the statute of limitations runs against all divisions of the state but not against the state; in other states — and we may say that this is the rule adhered to by a preponderance of the authorities — the statute of limitations does not run against the public whatever division of the state may be involved as to its property held in a governmental capacity.
In view of the holdings of our own courts with reference to encroachments on highways and public roads, the court is of the opinion that the reasonable and safe rule to adopt and that will eventually be adopted by our Supreme Court, is that no lapse of time will bar the public authortities in an action to recover the possession of lands belonging to a public highway or street, or to compel the removal therefrom of obstructions placed therein however long they may have been maintained and whether their character may be solid and permanent, or temporary and frail— and this rule will be applied to highways, streets or roads whether in municipalities, counties, townships or the state. There can be no distinction on principle between state roads, county *139 or township roads and streets of a municipality, for in each and every case they are highways held by the-public authorities as governmental agencies in their governmental capacity. The truth is that the ownership of all public highways is in the state, and it appears to be a departure from principle to hold that the statute of limitations applies to city streets or county roads and not to state roads. There is no more reason for exempting state roads from the operation of the statute of limitations than there is for exempting city streets and county roads therefrom.
Without pursuing the arguments further on this point, the court is of the opinion that the statute of limitations should not under the recent decisions in this state, be applied to bar the city, county' or township from a recovery of a part of the highway claimed to be held by adverse title for a period of twenty-one years or more under a claim of ownership.
Furthermore, whatever might be the rule where the entire width of the roadway or street is occupied, thereby cutting off entirely the public use of the highway, the rule as to encroachments merely, so long as the public does not need the entire width of the highway for travel, is different from that laid down where the entire width of the highway is taken.
But it is contended in the case at bar that this turnpike road, inasmuch as it was owned and controlled by a private company —the Hamilton, Springfield & Carthage Turnpike Company— was not a public road or highway in the same sense as free county, township or state roads or streets in a municipality, until its abandonment in 1897, and that the rule applicable to public highways could not and should not be applied to this highway prior to 1897, and that defendant’s right by adverse possession accrued long before that date, in fact .in 1871 or 1872, twenty-one years after the abutments were erected.
Without commenting upon the following authorities, the court has come to the conclusion that so-far as the public rights in toll turnpikes is involved, to keep the same open and free from nuisances, there is no distinction between such highways and free turnpikes, roads or streets. Chagrin Falls Plank Road Co. v. Cane, 2 O. S., 419; Com’rs of Cuyahoga Co. v. State Plank Road, 1 N. P. (N. S.), 143; Commonwealth v. Wilkinson, 33 Mass., 175; Craig v. People, 47 Ill., 487; State v. Gravel Road Co., 138 Md., *140 332; Northern Central Ry. Co. v. Commonwealth, 90 Pa. St., 300; State v. Maine, 27 Conn., 641.
Again, the charter of the defendant company, 44 O. L. L., 282, does not authorize it to use the highways or parts thereof in such a way as to interfere with the public use thereof; and now that the increased traffic on this highway, the construction of street car tracks therein, between the defendant’s abutments and the public exigencies, require the use of the entire width of the roadway in the opinion of the county commissioners, it would seem strange that the defendant company, having erected these abutments without right or authority, should plead the continued existence of its own wrongdoing as a defense to the public demand that these nuisances be removed. The power and authority of any private corporation to do any act is to be determined by the grant of power contained in its character. It may be remembered that in the unreported case of Village of St. Bernard v. B. & O. R. R. Co., the court of common pleas and the circuit court of this county held against the railroad company on its claim that it had acquired title to the land upon which a part of its abutments rested, by adverse possession for twenty-one years. This fact was admitted — that is that a part of the abutments had been in place continuously for twenty-one years prior to the commencehient of the action to compel their removal, and this claim of title by adverse possession was squarely raised in that case.
The difference between that case and the one at bar is in the character of the highway. In the case of St. Bernard v. B. & O. S. W. R. R. Co., there was no question but that the Carthage pike was a free turnpike or county road. But if toll turnpikes, as to the public’s rights of travel and use therein and thereon, are on the same footing as free county roads and free turnpikes, as the court believes the authorities cited hold, then there is no reason why the rule applied in the case just cited — although it be an unreported case — should not be applied in the ease at bar.
On the grounds that the statute of limitations does not apply to the plaintiffs in the case at bar under the facts of the ease and that no lapse of time can legalize a public nuisance, such as are the obstructions in the highway of the character of these abutments, under the authorities cited, the court finds that these *141 abutments and tbe embankments behind the same within the limits of this sixty foot roadway, can not be maintained as against the plaintiffs, and the defendant will be enjoined from maintaining the same and be required to remove them and restore the roadway to its former condition for the full width of sixty feet, within one year from the date of the decree to be entered herein.
The prayer of the petition is granted.