THE CITY OF CINCINNATI *v.* PLATT EVANS.

Municipal corporations are subject to the operation of the statute of limitations. in the same manner, and to the same extent as natural persons.

Notorious and uninterrupted possession for more than twenty-one years, by a private individual, under a claim of right, of land dedicated to a city for streets or public squares, will bar the claim of the city to its use. The case of *Cincinnati* v. *The Presbyterian Church,* 8 Ohio Rep. 298, approved and affirmed.

In an action of trespass for an injury to a building occupied by the plaintiff as a store, resulting in an interruption of his business, he may recover, in addition to the damages done to the building, such further sum as will compensate him for the loss of its enjoyment while such interruption continued.

For this purpose it is competent to prove the nature and extent of the business, the necessity of using the building for its prosecution, and the value of such use to him during the period of interruption.

But in the absence of fraud, or malice, or other circumstances justifying the recovery of exemplary damages, the amount of profits which might have been realized by employing his personal services and capital, in the prosecution of his business in the injured building during such interruption, cannot be. recovered.

In such case, the loss of profits does not furnish a proper rule for estimating the damages ; but the loss of the use of the property, and the value of such use to the injured party, is all that can be recovered.

IN error to the Superior Court of Cincinnati.

In the year 1852, the city of Cincinnati, by order of the city council, removed the front of a storehouse belonging to Platt Evans, on Main street, in the city, and in which he was, at the time, carrying on the business of a merchant tailor. Evans

brought an action against the city to recover for the injuries he sustained by the removal of the front of his building, and the consequent interruption to the business he was conducting in it.

The case came to trial to a jury in the superior court of Cincinnati at special term in December, 1854. It appears from the bill of exceptions taken on the trial, that the plaintiff below produced evidence going to show that he erected the building on what was then supposed to be, and still is claimed to be, the original line of the street, and that the line was " given by the city surveyor ;" that the houses both above and below him were then built to the same line on which he built, and that he had occupied the ground since the year 1822 ; that the front of the building was torn down by certain officers of the city in a summary manner, without any action or suit against him. In showing his damages, Evans introduced testimony tending to prove a loss of profits and permanent custom. Counsel for the city objected to the introduction of this evidence, but the court overruled the objection, and permitted the evidence to go to the jury. To this ruling, counsel excepted.

On the part of the city, testimony was produced going to show that Evans had built over the original line of the street, as laid out by the original survey ; that this line was established by well-known corners, landmarks, and secondary monuments ; that it had been built by, as far back. as the year 1818; and that Evans's building, at the time of the removal of the front thereof, was over the line of the street, and in the street, and that only so much thereof was removed as projected into and over the street. Also, testimony going to show that the city had repeatedly, during the period before the expiration of twenty-one years, after the year 1822, when Evans first built, asserted a right to the street, as claimed to have been originally laid out, and that others on the same square had, during that period, removed their buildings back to the said original line of the street, in accordance with this claim.

The court instructed the jury as follows:

" It is contended on the part of the plaintiff, that whatever may have been the original line of the street, its apparent and

reputed line was the one by which he built his house, in common with his neighbors ; that it was shown to him by the city surveyor, when he began to build; that his improvement was made in good faith and without fault on his part ; had been acquiesced in by the city authorities, without disturbance or complaint, for more than twenty-one years, and that thereby he had a right to continue undisturbed, and the city lost all claim to his removal. Should you find these facts true, then the plaintiff had a right, as claimed by him, to remain undisturbed in his property, and the city authorities had no right to remove or destroy it in a summary manner.

" We recognize the doctrine, that the corporate authorities of the city sustain the same relation to the property and interests of the city, that a private individual does to his own ; and that except when expressly restrained by positive law, or by the nature of the trust conferred upon them, they may deal with the interests and property of the city as an individual may with his own. Among the duties devolved upon a municipal corporation, is that of regulating and taking care of its streets and highways ; and seeing that their boundaries are properly fixed and preserved. It would be strange to say, that whilst it is their duty to keep the streets open and free from nuisances, they have no power to determine where the lines of those streets are located. But it would be still more strange to say, that they can make and unmake, establish and destroy those lines at pleasure ; so that the authorities of to-morrow may obliterate and destroy lines which have been solemnly fixed by the authorities of to-day. The truth is, they have a right from necessity, as individuals, to establish the lines of their own possessions, and when once established, they are equally bound by them. Public policy and the quiet repose of the community require this much. It would be monstrous, for example, in a case like the present, after the city had caused the plaintiff to be torn down, according to what it claimed to be the line of the street, and allowed him to rebuild upon the new line, if another city council, if it should hereafter discover that he was a foot or six inches still over the true line as originally laid out, might again remove him, and so on, *toties quoties.*

There must be a time when these matters become fixed, and there must be an authority resident somewhere in the city, by which they can be settled and fixed. The best rule we can lay down as to time, is that established by the statute of limitations. Had this been a case of boundary between two individuals, twenty-one years uninterrupted and peaceable possession of the line claimed by the plaintiff, would have established his right to hold by it. The same rule is reasonable, and must apply, we think, with regard to the corporate authorities of the city in the present case, should you find the facts as claimed by the plaintiff.

"If, therefore, the city authorities stood by and allowed the plaintiff to build his house upon a line, supposed at the time to be the true line of the street, and to remain there for twenty-one years, without interruption, or without taking any measures to assert the right of the city against the plaintiff, such acquiescence would amount to a recognition of his right, and be as binding in law as an establishment of the line by positive direction; and in such case the city authorities had no more right to cause the plaintiff's house or any part thereof, to be removed in a summary way, than they would have had to widen the street, had it been too narrow, as originally laid out, to accommodate the increasing business of the city. The only way they could properly act, would be by causing the property to be condemned and paid for, as in cases of the appropriation of private property for public uses."

The court further instructed the jury, that if they found for the plaintiff, they might allow him damages for the loss of profits in his business, occasioned by its interruption by the acts of the defendant; but at the same time the jury were instructed to keep such damages separate from such other damages as might be assessed by them for the plaintiff.

The verdict was for the plaintiff below, including seven hundred dollars for loss of profits in business.

The defendant then moved for a new trial, on the ground that the court had misdirected the jury, and because the verdict was against the law and the evidence. This motion was overruled,

and judgment entered for the full amount of the verdict, including the damages for loss of profits. The superior court, in general term, on error, affirmed this judgment. To reverse the judgment of affirmance, is the object of the proceeding in this court.

It is claimed on behalf of the plaintiff in error, that the court below, in its charge to the jury, instructed them that the statute of limitations would run against the city. This is assigned for error.

It is claimed, also, that the court below erred in permitting Evans to recover for loss of profits.

*McGroarty & Brown*, and *Mills & Hoadly*, for plaintiff in error.

*Mills & Hoadly*, made the following points :

1. In such a case as this, the statute of limitations does not run against the city.

It is elementary law that the statute does not run against a State. The State holds all its property in trust for the public—it cannot be guilty of laches—and as a consequence, is not barred by any general language in a statute, unless it is expressly named. Angell on Limitations 36.

Now, there is no reason that can be given to support the rule as to a State, that does not apply with equal force to a large city. The latter holds the street in trust for the public, and it would certainly be against policy (that is, public interest,) to allow the negligence, or the bad faith of officers thus to narrow those rights, over which they are placed as guardians. Municipal corporations, such as towns and counties, are representatives of the State, as to certain local matters. They enjoy and exercise certain franchises.

See *Madison County* v. *Bartlett*, 1 Scam. 70, where it is held that a municipal corporation stood, in reference to the statute, on the same footing with the State ; that the reasons for this rule were equally applicable to both, and that no laches could be attributed to either.

In the case of the *State Bank of Illinois* v. *Brown et al.*, 1

Scam. 106, the above case was approved, and, because the State Bank was owned by the State, it was held that the statute did not run against it.

This case only follows the principle decided in the case of *Lee* v. *Norris*, Cro. Eliz. 331. In that case A had a lease from the Crown for ninety-nine years, and having been out of possession for more than twenty years, recovered notwithstanding, in eject-ment. It was held that the possession of A was that of the king, against whom the statute did not run.

If, then, the principle properly applies to crown lands held by a tenant, and to a bank owned by a State, why should it not as properly apply to a city corporation, in respect to a street, which it holds for the public as the representative of the State ?

2. In such a case as this—tort, unattended with malice—the direct and immediate consequences of the act, are alone to be taken into consideration—future contingent profits never. The ground of the distinction is, that while the former may properly be presumed to have been in the contemplation of the person committing the illegal act, the latter cannot be. See Sedgwick on Damages 112 ; *Masterton* v. *Mayor of Brooklyn*, 7 Hill 62 ; *Borradaile* v. *Brunton*, 8 Taunton 535 ; *Blanchard* v. *Ely*, 21 Wend. 342 ; *Driggs* v. *Dwight*, 17 Wend. 71 ; *Thureau* v. *Thornhill*, 2 W. Black. 1078.

By the same rule, in the case of *Thureau* v. *Thornhill*, 2 W. Blackstone 1078, damages for a supposed loss of profits were de-nied. The case of *Hadley* v. *Baxendale*, decided in exchequer, February, 1854, 26 Eng. Com. Law and Eq. Rep. 398, reviews all the cases on this subject, and sustains the principle claimed.

In cases of tort, *where there is malice*, evidence may be intro-duced of a loss of profits; not as a rule of damages, not because they may be presumed to have been within the contemplation of the parties, but as one of the elements for estimating vindictive or exemplary damages. *Ingram* v. *Lawson*, 6 Bing. N. C. 212 ; *Gunter* v. *Astor et al.*, 4 Moore 12, 16 Eng. Com. Law Rep. 357 ; *Amiable Nancy*, 3 Wheaton 560.

In cases of collision, of illegal capture, of insurance, of marine trespasses, the rule is well settled that the profits of a voyage

cannot be recovered.  *La Armisted de Rues,* 5 Wheaton 389 ; *Schooner Lively,* 1 Gall. 325.

All the reasons for refusing profits in such cases are applicable in respect to the profits of a merchant tailor—profits that might have been made on transactions that never took place. Such profits would have to be ascertained by " a calculation upon conjecture," as Judge Story expresses it in 1 Gall. 325.

*Coffin & Mitchell,* and *Kebler & Force,* for defendant in error.

*Coffin & Mitchell* argued in substance :
1. As to the statute of limitations.

We do not think the naked question, whether or not the statute of limitations runs against the city, necessarily arises. The rule given by the court to the jury did not depend alone upon uninterrupted and adverse possession for twenty-one years, but upon positive affirmative acts of the defendant, establishing the boundary of the street, and the line between the plaintiff and defendant, and occupancy, by the plaintiff, according to that line.

The whole charge must be taken together, and it is clear, from the record, that the case went to the jury, not on a right in the plaintiff arising from the bar of the statute, but upon the acts of the defendant establishing the line of the street, assented to by the plaintiff, and acquiesced in by all parties for a long time.

The court did not err in its charge to the jury. *Commonwealth* v. *Miltenberger,* 7 Watts 450, is a case in point.

Where adjoining claimants take possession up to a given line, and claim it for boundary for years, that is evidence that it is the true line, and where the true locality of the line is doubtful, such acts are regarded as furnishing evidence that the line so recognized is the true line, and neither of the parties is at liberty to abandon such line, although the original line should afterwards be ascertained to be at a different place.  *Gillchrist* v. *McGee,* 9 Yerger 455.

A mere acquiescence in a line as a dividing line between adjoining properties for fifteen years, is sufficient to establish the line as the true line of division.  *Brown* v. *Edson,* 23 Vermont 435.

That a statute of limitations does run against a city corporate, is, we suppose, settled in this State. *Cincinnati* v. *The Presbyterian Church*, 8 Ohio Rep. 298. See also, *Dudley* v. *The Trustees of Frankfort*, 12 B. Mon. 610 ; Angel on Limitations, sec. 38 ; *Armstrong* v. *Dulton*, 4 Dev. 15 N. C. Rep. 568.

2. As to the recovery for a loss of profits.

We claim, on the part of Evans, *to recover damages for a loss in his business, occasioned by its interruption by the trespass committed by the city.*

The use of the word " profits " cannot affect the question. It is damages for a loss in business ; the direct and immediate consequence of the acts of the defendant; damages " suffered by reason of the trespass."

The following cases fully sustain, in principle, the ruling of the court below on this point : *White* v. *Mosely*, 8 Pick. 356 ; *Williamson* v. *Barrett*, 13 Howard 101, 106 ; *The Narragansett*, 1 Blatchford C. C. R. 211 ; *Lincoln* v. *S. & S. R. R. Co.*, 23 Wend. 425 ; *Phil., W. & Balt. R. R. Co.* v. *Howard*, 13 Howard 307. See also, Sedgwick on Damages, 79, 88, 89, 90, and cases there cited.

RANNEY, C. J.

But two questions have been pressed upon our attention in the argument of the plaintiff's counsel—the one going to the defendant's right of action, and the other to the measure of his damages. The action in the court below, was brought against the city to recover for injuries sustained in the removal of the front of a store building by the order of the council, and the consequent interruption to the business of the defendant, which he was prosecuting in it, until the injury could be repaired. On the part of city, it was claimed that the part of the building which they caused to be removed, was within one of the public streets of the city, and they attempted to justify its removal for that reason. This was met with proof on the part of the plaintiff below, tending to show that he had in good faith placed his building upon the apparent and reputed line of the street, as it was shown him by the city surveyor when he commenced its

erection ; and that he had from that time, and during a period of more than twenty-one years, continued in the uninterrupted, exclusive, and adverse possession of the ground upon which it was located. The court instructed the jury that if they "should find these facts true, then the plaintiff had a right as claimed by him, to remain undisturbed in his property, and the city authorities had no right to remove or destroy it in a summary manner." It is very far from being clear, that the naked proposition argued by counsel, that municipal corporations are within the provisions of the limitation act, and that an adverse holding of streets or squares for the statutory period, will bar all remedy for their recovery, can be fairly said to arise from the charge given to the jury. This proposition is so connected with other material considerations, as, perhaps, to require us to give effect to them all, in passing upon the correctness of the instruction as a whole. But as we find no difficulty in fully approving the charge, in the absolute form in which it has been presented, we are content so to consider it. In treating this question, we need do no more than refer to the case of the *Lessee of the City of Cincinnati* v. *The First Presbyterian Church*, 8 Ohio Rep. 298, and make our own, the conclusions to which the court then arrived : that municipal corporations are subject to the operation of the statute of limitations, in the same manner, and to the same extent as natural persons ; and, as a consequence, that notorious and uninterrupted possession by a private individual, under a claim of right of land dedicated to a city for streets or public squares, for more than twenty-one years, will bar the claim of the city to its use. This case was decided in 1838 ; was fully argued by eminent counsel, and carefully considered by the court. In following it now, we not only yield the respect due to a decision of the court of last resort, which has so long been supposed to have settled the law, but with a full approval of the principles upon which it is founded.

2. The remaining question is one of more difficulty ; and after a careful examination, we find ourselves unable to concur in the views expressed by the learned judge who presided at the trial.

Against the objection of the counsel for the city, the plaintiff

below was allowed to give evidence of " a loss of profits and ·permanent custom by means of the acts of the defendant ;" and the court, with a view to this evidence, instructed the jury, that " they might allow the plaintiff damages for the loss of *profits in his business*, occasioned by its interruption by the acts of the defendant." The jury having found such damages, which, under the instruction of the court, they have separately assessed, the question arises, whether this part of the judgment can be sustained.

There is, perhaps, no subject so important in the practical administration of-justice, about which so much doubt and uncertainty exists, or such confusion is to be found in the adjudged cases, as that which concerns the rules for assessing damages in actions for torts. Some principles, however, are well settled ; and by carefully attending to the analogies they afford, we shall be much more likely to arrive at a correct conclusion, than by placing entire reliance upon particular adjudications. One of these principles, applicable to cases like the present, where neither fraud, malice, or other circumstance, justifying the recovery of exemplary damages, exists, is that which limits the recovery to the natural and proximate consequences of the illegal act. These, it is fairly presumed, the party committing the injury in good faith, or under a claim of right, may foresee and expect to compensate, should he be found in the wrong. But the principle necessarily excludes all those consequences of the act which are remote and indirect, and all investigation of losses which are purely speculative. It is very true, that the simple statement of this principle, falls very far short of determining what are the direct, natural, and proximate consequences of a particular act, or what are too remote, speculative, or contingent, to be taken into the account. In the language of Mr. Sedgwick, " Even this is vague enough, for language confesses itself incompetent to depict the nicer shades of right and obligation, and all rules will be found valueless unless applied and expounded by tribunals as sagacious as they are learned." Sedg. on Dam. 115. But this rule has been repeatedly and constantly applied in a class of cases, which it seems impossible to distinguish from this,

and in each of which the claim for profits has been refused. The cases to which we allude, are those in which it has been uniformly held, that the damages to be recovered in marine trespasses, resulting in the illegal breaking up, or interference with the voyage, could not cover the profits of the voyage. *Debol* v. *Arnold*, 3 Dall. 333 ; *Anna Maria*, 2 Wheat. 327 ; *Amiable Nancy*, 3 Wheat. 546 ; *L'Amistad*, 5 Wheat. 385 ; *Smith* v. *Coudry*, 1 How. 28 ; *Boyd* v. *Brown*, 17 Pick. 543. A necessary extension, perhaps, of the same principle, was allowed in the case of *Williamson* v. *Barrett*, 13 How. 101, where the owners of a steamboat, in a suit brought to recover for injuries sustained by a collision, in addition to the amount necessary to raise and repair the boat, were allowed to recover a further sum to compensate them for her use, during the time she was being refitted. In the case before us, there is no reason to suppose that the city officers knew they were acting illegally, or intended anything else than to discharge what they supposed a public duty. In this, however, they have been found mistaken. The plaintiff below has been injured, and ought to be compensated so far as he can be, and preserve the integrity of salutary rules. It must have been evident to those who deprived him of the use of a building in which he was prosecuting his business, that the simple rentable value of the property during the period of interruption, would not compensate him for the interference. They could not fail to have contemplated a further injury, as the necessary consequence of their act, and for that further injury he is entitled to recover. But the supposed or contemplated profits of his business during the period, does not measure this injury. Such an issue cannot be proved without indulging in suppositions and conjectures which the law does not permit ; and in so far as it involves his capital and personal services in the result, includes matters not within the scope of the action. Upon the whole, we are of opinion, that, in addition to the damages done to the building, he was entitled to recover such further sum as would compensate him for the loss of its enjoyment while the interruption continued ; and that for the purpose of showing how much this was, it was competent to prove the nature and extent of his

business, the necessity of using the building for its prosecution, and the value of such use to *him* during the period of interruption.- But that in the absence of fraud, or malice, or other circumstances justifying the recovery of exemplary damages, the amount of profits which might have been realized by employing his personal services and capital in the prosecution of his business in the injured building, during the period for which he was deprived of its use, cannot be recovered. That, in such case, the loss of profits does not furnish a proper criterion for estimating the damages; but the loss of the use of the property, and the value of such use to.the injured party, is all that can be recovered.

Judgment reversed as to damages for loss of profits, and affirmed as to the balance.

BARTLEY, J., dissented, being in favor of reversing the entire judgment.