Wright, J.
The first and principal error assigned is the admission of the record, purporting to be a record of the establishment of the road in question. It is urged that there are many mistakes and errors in this record, and doubtless the same remark, with propriety, may be made, of most of the early proceedings that relate to the establishment of the roads throughout the state. The disposition of courts, however, has always been to uphold these proceedings of inferior tribunals, so far as consistently may be done. As early as the case of Harding v. Trustees, etc., 3 Ohio, 231, ithis liberality was shown toward proceedings of justices, and the remarks in that case are quoted with approbation so late as 13 Ohio St. 416.
In the case of Arnold v. Flattery, 5 Ohio, 271, perhaps the earliest of reported cases on this subject, there were serious objections to the record offered. In that case the road was established under the law which required an application to •be made to the commissioners signed by twelve landholders, ..and thirty days’ notice to be given preliminary to any authority given to the commissioners to proceed. 13 Ohio St. 417. But the record showed neither petition nor notice, yet it was admitted in evidence. And the court say, “ Nor can it be required, after the lapse of many years, that to sustain a public road, every preliminary step directed to be taken in establishing it, must be proven by existing records.”
In Anderson v. The Comm’rs of Hamilton County, 12 Ohio St. 635, the same class of objections were made to the admission of the record, that are made in the case at bar, the law being that of 14th March, 1831, the same we are now considering. It was there claimed that the record must ¡show on its face, or be supported by proof, that there was a *499 proper petition and notice duly given; but the court say that the record which the statute directs, must be regarded, in any collateral proceeding, as evidence of the establishment of the road. And further: “ If the report, survey, and plat be recorded, as directed by the statute, the presumption that it has been properly and regularly done will arise, and the record will, in the language of the statute, show that the road is to be considered a public highway.” And the court proceed to remark that if a road thus established be opened and used, a further presumption may arise that those who are, or should be cognizant of such use, acquiesce therein, and are so estopped to dispute the legality of the proceedings.
The application of this principle, it is said, will generally suffice to prevent the obstruction of public highways, which have been long in use, on the ground of a want of compliance with the requisites prescribed by the statute, as essential to their original establishment.
In Beebe v. Scheidt, 13 Ohio St. 415, with regard to the giving of notice prescribed by the statute, it is said: “ While, therefore, the notice required in section 5 should certainly have appeared in the record, to make the same perfect and conformable to the statute, it does not appear to be such an omission as renders the proceeding, while unreversed and in full force, of no effect, and to authorize the court to treat the record as a nullity in a collateral proceeding.”
It will therefore be seen that whatever might be the effect of objections taken, in the direct proceeding, establishing the road, these objections are altogether of different moment, when made in a collateral proceeding, in a case of a road established and used for a great length of time, and when they are made by one long cognizant of that use, who seeks to obstruct the highway, without other justification than that the original record is defective.
The first objection to the record is, that the petitioners do not appear to be “ residents of the vicinity,” as the statute requires. The petitioners describe themselves as inhabitants and freeholders of the township of Avon, and the road is in *500 Avon. The vicinity was doubtless considered sufficient by the commissioners in 1831, and we see no reason to doubt that conclusion now.
The next objection stated by counsel is, that the record fails to show that any bond was given, as required by the statute. The language of the law is this (Swan, ed. 1841, p. 797, sec. 2) : An application for a road shall be by petition, “ and one or more of the signei’s to said petition shall enter into bond,” etc.
Also (Ib. 802, sec. 16): “ That in all applications made under the provisions of this act, the county commissioners shall, before granting any order thereon, require of the person or persons making such application, a bond,” etc.
It thus appears that the law provides for a bond being given, before the commissioners take action. But it does not provide that the road record must show that.fact. What is to constitute the record of the road appears to be this: When the viewers have reported, if the commissioners are satisfied that the road will be of public utility, “ they shall cause said report, survey, and plat to be recorded, and from thenceforth said road shall be considered a public highway, and the commissioners shall issue their order directing said road to be opened.” Swan, ed. 1841, p. 798, sec. 4. Hence, as Gholson says in 12 Ohio St. 642: “ If the report, plat, and survey be recorded, as the statute directs, the presumption that it has been properly and regularly done, will arise.” It by no means follows that because the record of the road does not show bond given, that for that reason no bond was in fact given. The commissioners keep other records than that relating to roads, an examination of which might, and probably would, show that all steps had been regularly taken.
So early as February 13, 1804, the act establishing the board of commissioners provided they should keep a just and accurate record of all their corporate proceedings, and they were to have a clerk to keep these records. Since 1821, the county auditor has been clerk of the commissioners, and required to keep a record of their proceedings, and *501 by the acts of 1824 and 1831, this record is still required to be kept. 13 Ohio St. 411.
This record, showing the action of the commissioners from day to day, might be expected to show that the bond in question was given, and still they might very properly refrain from causing it to appear in a record which provided only and specifically that the report, plat, and survey be recorded.
In a collateral proceeding, therefore, like the one' before us, it can not invalidate the record, that it does not exhibit a fact which the law has not required it to exhibit.
In the case of Sessions v. Krunkilton, 20 Ohio St. 349, the statute required that before any steps were taken, a bond should be given, and the proceeding was invalidated because it appeared affirmatively that no bond had been given. It does not so appear here. The fact that the record offered in evidence, did not show bond given, does not prove that it was not given.
Various other objections are made.
3. That the record fails to show that the viewers were freeholders, as the statute requires.
4. That one of the three viewers was the surveyor, when the statute requires three viewers and a surveyor.
5. That the record does not contain an order to the viewers and surveyor.
6. The record does not show that the viewers and surveyor were sworn.
7. The viewers reported at the March session, 1832, of the commissioners, who ordered the report to be recorded at the same session, when the statute did not authorize the report to be recorded until the next session.
8. The record fails to show that the commissioners ever issued their order to open the road.
As to all these objections, we only desire to say, had they been taken in the proceéding itself which established the road, as was the case in Ferris v. Bramble, 5 Ohio St. 109, and in the matter of Wells County Road, 7 Ohio St. 16, cited by counsel, they might and probably would have been considered by the court. But what may suffice to reverse on error *502 will not necessai’iJy invalidate the same record, when attacked in a collateral proceeding. If the court had jurisdiction, however erroneously it may have proceeded, there is no remedy when the case is finally closedl
None of the objections made go to such jurisdictional facts as will impeach this proceeding, and the record was properly admitted. '
It is further claimed by plaintiff in error that he has had possession of this strip of ground, which he has inclosed, for more than twenty-one years, and he therefore has title thereto. This position is answered by the case of Lane v. Kennedy, 13 Ohio St. 42. The doctrine of that case is that the mere inclosing of a part of a highway by a fence, does not necessarily constitute such adverse possession, as against the public, as will confer title by mere lapse of time. When roads are laid out and travel is limited, necessity may not require that the whole width should be opened when a less quantity answers every purpose. But the fact that a portion of the highway remains in the possession of adjoining owners, is merely matter of sufferance, from which rights can not accrue. If, as in 5 Ohio St. 594, such proprietor should erect permanent improvements upon the ground in question, indicating an intention permanently to appropriate the land, a question of adverse possession might arise. But such is not this case. A fence is not such permanent improvement. Nor does the fact that a hedge was planted, vary the case. The public have a mere easement for the road. The proprietor still owns the fee, and may use it in any way not inconsistent with the purposes of a road. He may plant trees ; he is entitled to the herbage ; and the setting out of a hedge entirely comports with his own rights, while it does not conflict with those of the public. There was not, therefore, such adverse possession as confers the title claimed. 2 Curw. 1154; Peck v. Clark, 19 Ohio, 367.
It is also claimed that the road has become vacated under the statute of 1853.
Section 29 of the road act of 1858 (S. & 0.1296) provides *503 “ that any county road, or part thereof, which has heretofore, or may hereafter be authorized, which shall remain unopened for public use for the space of seven years after the order made or authority granted for opening the same,” etc., “ shall be and the same is hereby vacated, and the authority granted for erecting the same barred by lapse of time.”
The construction of this statute is, that it applies only to roads which have been authorized by the commissioners, but never in fact opened. The language is, any’ road “ authorized which shall remain unopened for public use.” Such language clearly applies to roads that never have been opened, otherwise they could not “ remain ” unopened.
Again, the seven years limitation runs from the date of the order granted'for the opening. Suppose a road duly opened; ten years after, it is closed, and remains so for seven years. How can that seven years date from the time of the order for opening, seventeen years before ?
This statute can not apply to such a case as this. Peck v. Clark, 19 Ohio, 367.
There is no error in the proceedings below, and the judgment is affirmed.