Caldwell, J.
Max Morehouse against1 Joseph Burgot, supervisor, and Charles Maddock against Joseph Burgot, supervisor; these two cases are alike and will be decided together'.
In early times there was a road extending east and west along the bank of the lake in Sheffield township. There was a road runninlg north and south down to the road,'and there is evidence to show that the north and south road extended not only to that road, but was continued further by being laid out and by use, on to the lake, on to the beach. There is evidence of logs being placed there and other property for, floating. So that we. find in this case that the north and south road did -extend to the lake. But in the course of time the waters of the lake ate. away the bank until this early road was about to be, or in places, was, destroyed. Thereupon, another road was located further. *175 south from the bank and the old road was thereupon given up. The old east and west road. The roadbed on the north and south road extending from the new road to the lake was not thereafter much used, but it was some used. Recently, it is shown, that the township authorities were about to undertake the improvement of it and make it more useful as a way to the lake and a highway, and this suit was brought to enjoin them from doing it.
-This suit is based upon two claims. First, there was an abandonment of this road, this end of the road between the néw road and the lake. And second, that the statute of limitations has run.
And it is claimed that the evidence shows that ever since the' making of the new road, that this piece of road between the new road and the lake has been , closed up by the owners on each side, and that they have gained in that way, long years ago gained the right to hold it from the township authorities, and to keep the township authorities from again using it as a highway, by reason of the statute of limitations.
The evidence as to that shows that Mr. Day for a long time owned the land on the west of this road. He never closed up, any part of this road; he never undertook to take possession of any part of it. On the east Fitch owned the property, and he not. only undertook to close the half of the road next to him, but he undertook to close the entire road, and it is claimed that' .he did keep it closed.
After a while Day sold his property to another party on the west, and it came into the hands of Maddock. Day owned .it when he died and it came afterwards into the hand of Maddock, .and b_v some sort of .an arrangement, as the evidence would lead us to believe, the owner on the east and the owner on the west then determined this road between them, and they mutually, or in some way, put a fence down the center of it. But this was after 1890. The possession of the west side of that road •.then shows simply this, that the owners of the land on the west .side never until 1890 undertook to take any possession of it. Whatever possession prior to that time the owner on the east .side had, or whatever possession he had taken of the road he-.then voluntarily gave up, and. another party, not privy to his. *176 possession or connected with his possession in any way whatever, then undertook to close up the west side.
If A occupies property for ten years and gets up and moves-out, and B goes in, not under A, without transfer of possession, of anything of the kind, and occupies it fifteen years more, they do not establish any adverse title at all. There must be some connecting link between the possession in order to put them together. There was none in this case according to the evidence we find if there is a statute of limitations of twenty-one yesalit never has run as to the west half of this road, and that being true, unless there is something in the doctrine of abandonment-separate from that of possession, there is no reason that the authorities cannot open the west side of this road.
As to the other part, the evidence shows in this case that there never was an exclusive occupation of this road, separate-from the public.
A cannot gain possession of B’s land and gain title to it if,, at the same time he is occupying it, B occupies it; that is impossible. That occupancy may be very small, may amount to nothing scarcely, but yet if there is an occupancy at that, time, it stops the statute right where it commenced. That was exactly the case with this entire road. There never was a time when the public did not go down that way to the lake; the evidence shows that clearly. It maybe small, but it m'akesno difference. It shows this principle, that there was an occupancy by the public and these property owners at the same-time ; during the time that the property owners claim to have-established title by exclusive possession, which they have not done, it establishes that principle, and that is the principle that is against their recovering this property in this way. But as to this question I shall not undertake to review the-authorities. The cases Cincinnati v. Evans, 5 Ohio St., 594; Williams v. Presbyterian Church, 1 Ohio St., 478, and Lane v. Kennedy, 13 Ohio St., 42, are all on the doctrine of equitable estoppel. And that doctrine is simply this, that if a man stands-by and sees his neighbor build on his property a very expensive,costly building, and then asks him to get off, and comes to-the courts to make him get off, knowing exactly what he was-doing, and when called upon to know why he did not ask him *177 to stop earlier, he answers, why he knew as well as I did where the line was, the records are public,, he could go to them and find out, surveyors are plenty, all wanting fees', he will be'es-topped.
That doctrine may be an answer according to those cases, and a court will under certain circumstances apply this equitable doctrine.
In the case from Cincinnati v. First Presbyterian Church, 1 Ohio St., 478, the officer himself misled the parties and caused them to build their church so they got -out in the street. ,
In Cincinnati v. Evans, supra, there was a great large building out in the street a few inches, and the doctrine was applied there. It has been applied nowhere in this state except where a party has done something by way of a large expenditure of money, and would have been a great loser by. reason of restoring the original line of the street.
There has been an uncertainty in the courts of this state for some years past, and some have applied this doctrine of estoppel to any kind of possession of a highway, regardless of the question of the amount of injury.
No question of damage is involved in this case. This is like the case referred to in Heddleston v. Hendricks, 52 Ohio St., 460. There the doctrine was put upon trespass, and makes it a continuous trespass from day to day, and a new offense. Where a party undertakes to get a road by trespass, there is no statute of limitations, there can be none. To apply the statute in that case would be allowing a party to do wrong and gain rights by it.
The rule seems to be this, no one by trespass on the highway can gain rights, unless the public stands by in silence and sees him make a large outlay of money, then such silence is a greater wrong, and will deprive the public of its property by estoppel. But there is no such equity here; the plaintiffs in these two cases are entitled to no such grounds of equity; there is no-damage going to come to them, except the loss of this land, and that being true they come under- the doctrine of Heddleston v. Hendricks, supra, and there can'be in their case no statute of limitations, unless this doctrine of abandonment applies.
But here there was no open and declared abandonment; no-substitution of one road for another. In Nail & Iron Co. v. *178 Furnace Co., 46 Ohio St., 544 to 548, the judge, says, in substance, if there be a case of abandonment it cannot apply short of twenty-one years, under such facts.
B. G. Johnson and B. M. Sevens, for Defendant.
Bee Stroup and W. W. Boynton, for Plaintiff.
The case of McAllister v. Hartzell, 60 Ohio St., 69, has no tearing, as there was a mere substitution of one way for the other.
Hence in a case of abandonment where a party claims the public authorities have abandoned in some other way than the statute provides, by mere silence, the public cannot be divested of its rights in the highway by any statute of limitations, unless some doctrine of equity comes in to estop the public authorities.
Neither of the plaintiffs are entitled to the relief asked for, arid their petitions are dismissed.