*Hamilton & Kirby,* for defendant in error.

---

## DEDICATION OF STREETS.

[Circuit Court of Lorain County.]

ANNA J. WRIGHT v. OBERLIN.

Decided, May 2, 1902.

*Streets—Dedication of—Unacknowledged Map Binding, When—Statute
    of Limitations—Does not Run Against a Municipality as to its
    Streets—Or in Favor of a Trespassing Lot Owner—Except Where
    Based Upon Equitable Estoppel.*

1. A property owner may make a dedication for street purposes by a
    map or chart on which he marks the streets and its width, or by
    allowing the public to use the ground for street purposes.
2. A map of a village which appears to have been followed, in all con-
    veyances by the original grantors and by the authorities, and is of
    record among the deeds, is effectual to bind the parties making the
    dedication, though not acknowledged by them.    Such a map is
    competent evidence for determining the width of a street.
3. Moreover, if it be shown that this map was before the Legislature
    when the village was incorporated, every property owner within
    the village is bound by it.
4. The statute of limitations does not run against a municipality as to
    its rights in the streets; nor does it run in favor of a trespasser
    upon a street or a highway.
5. Cases where it has been held that the statute runs against a munic-
    ipality as to its streets, are cases where property owners would
    otherwise suffer a great hardship, and are based on the ground of
    equitable estoppel.

CALDWELL, J.; HALE, J., and MARVIN, J., concur.

This is a controversy in this court on appeal, over the width of a street, and as to whether the plaintiffs are occupying any part of the street as laid out and dedicated; and they bring this action to enjoin the village of Oberlin from laying its sidewalk further in upon this land, or further from the center of the street than it now is.

The county commissioners of Lorain county opened a country road, east and west through Oberlin, known as West Lorain street. This was before Oberlin became a village. And the plaintiffs claim—

First. The street is only sixty feet wide, as laid out in 1837.

Second. The land in question was never in the street.

Third. Adverse possession.

It is admitted that at the time the county commissioners established this road, that it was done regularly as the statutory laying out and establishing of a highway which passes through what is now the village of Oberlin.

That being ascertained, the street sixty feet wide and its location upon the ground is all that is to be determined in this case, unless, thus establishing the street, it takes in some of the plaintiff's land, and if it does then the question of the statute of limitations comes in, as to whether the land can be claimed after the persons owning this property have occupied it or had it within their premises for so long a period, from 1857, or on or about that time; not quite so long as that.

Now this is true, unless there has been a dedication of a street wider than that since. It is not claimed that there is any other statutory dedication than the one I have already named; but it is claimed there was a common law dedication of a street not only sixty feet wide but sixty-six feet wide, and it has been so used and accepted by the public and that that street is now of that width, and the village of Oberlin, or city of Oberlin I guess it is now, has a right to have the full width of that street, and hence has a right to lay its walks where it is contemplating, and the plaintiff has no right to the restraining order in this case.

There are various ways in which an owner may dedicate his property. He may dedicate it by allowing the public to use it, or may dedicate it by a chart or map in which he marks his streets, and their widths and the public grounds intended by him as such. And where there is a user, and where the public can be said to have accepted the street, that is sufficient to make a street.

In order that the defendant may overcome the establishment of this street by the county commissioners, it introduced in evidence here a map, which has been received by this court subject to exceptions to be passed upon at this time, as to whether it is proper evidence in the case or not. That map was made by Freeman, a surveyor, and it is on record; not among the maps of the county, but in the volumes of deeds. It is recorded, and a certified copy of it is brought into this case.

No objection is made by reason of the certified copy; the objection is that it is not competent in the first place. And the principal reason urged why it is not competent is, that it is not shown in this case that the original proprietors of these lands, the college, the owners who obtained them in large tracts and divided them up and sold them out in lots, that those owners ever in any way recognized this map. It is claimed the evidence shows it is not their map. That is, it don't show that they ever acknowledged it, that they ever required it to be put on record; that they ever made it or had it made for themselves. Well, if that is true, unless more than that can be shown, it is not entitled to go in evidence in this case as establishing the boundaries and the width of these streets.

Now to show that while the original proprietor may not have had this map made, may not have acknowledged it, may not have had it put on record, it is shown that a map known in the evidence as "Exhibit C," was made, which is exactly like this map, only showing more of the territory divided into lots, made at a later time, and which is really the same map. Evidently two maps could not be made independent of each other and made just alike as they are; one must be a copy of the other; and that in deeding all these lands in question and other lands of the college, the college and the public authorities there went by

that map, consulted it as to lots, as to boundaries, as to streets, and everything that pertained to the location of these different parts of lands upon the ground.

Now, that is one ground on which it is claimed the first map becomes competent, and the second is competent because that clearly under the evidence was recognized as the map of this ground by the original proprietors.

It has been said that that map "C," was made at too late a time to bind these parties, while the map purports to be made a month or two perhaps after the deed of this property was originally given (the first deed in 1857 that was) and evidently the data was taken either from that map or from the first map I have referred to, the map made by Freeman, a copy of which is introduced into this case.

Now, it don't make much difference whether a party makes a map himself and acknowledges it and puts it on record—those are the steps necessary for him to make a dedication, where it is had by map—or whether he acknowledges a map that some one else has put on, and follows it in his conveyances, it being shown clearly not only that this map has been followed or used in all these conveyances, but it is shown that it is the only map of the village of Oberlin when it was a village. That being true, it being the only map, and being a map followed, it is just as effectual to bind the parties who originally dedicated these streets and lands and public grounds as though they had acknowledged it in the first place for that purpose.

In the second place, this first map, the map of Oberlin, was evidently the only map that was before the Legislature when it passed the bill creating or establishing the village of Oberlin. And that act referred to a map that was evidently before the Legislature. And it is shown that this is the only map that was then in existence, and it was the only map that could have been referred to. That being true, that map being there established, and the Legislature incorporating the village according to that map, and the village agreeing to that map, everybody owning property was bound by it.

For these reasons we think that both of these maps are admissible in evidence.

Now these maps say, both of them, that this street in question is a street sixty-six feet in width—one hundred links. It is marked on the large map, which is the last one made in 1857—on the east end is marked one hundred links; on the north side of the college green it is marked one hundred links east of the campus; and it is marked one hundred links west of the campus. This establishes it, this map does, as a street sixty-six feet wide; the first map established it the same way.

As we have stated, the acknowledgment of these maps afterwards, and deeding according to them and following them, if they were so far adopted by the original proprietors, then that was a dedication of those streets sixty-six feet wide—one hundred links.

That being true, the only thing further is to see whether there has been an acceptance on the part of the public, and when we say on the part of the public we do not mean on the part of the lot owners. If the street was dedicated and the public has accepted it, that is all that is required.

The street was opened on the north side as a sixty-six foot street, and on the south side along by the college grounds or college green as it is called, it is a sixty-six foot street; then there is a jog in the street just beyond the college green of five or six feet, perhaps six feet, and that jog continues on the south side with the distance varying, growing less as Prospect street is approached, and beyond Cedar it grows less all the way out, but the narrowest place is in front of the property in question—of Miss Wright's property—which is only about twenty-five feet.

The witnesses testified that it is easy to be seen that there is a curve in the sidewalk, that it projects at this point along there, a long bend in it, that the west end of the sidewalk lies in on the lots and the east end also lies in on the lots further than the other, and the measurements confirm this testimony.

Now the monuments of this street are thoroughly established by the evidence of the surveyor and by those who have seen the monuments. There is a monument on the northeast corner of the college green; then there are monuments at the intersections of streets from that on, four monuments establishing the center

line of this street, and this street as laid out in the first place was laid out as being on the original lot lines; but it is impossible now, the surveyor tells us, to tell where the original lot lines are.

The description of the original lots included monuments that have long since perished and been obliterated and no trace of them can be found. Therefore there is no way of establishing the original lot lines, except to establish them by the streets that are laid upon them. This street being laid upon the original lot lines it must now be conclusive under the facts and the facts that are absent and can not be had by the court—it must now be conclusive that those monuments in West Lorain street are on the lot lines; and that lot line and those monuments we can not change. If the court could upset long established monuments and surveys of that character we would soon get landholders into great confusion. It would be impossible. As I stated, this street along the north side has been occupied as thirty-three feet; the line of occupancy has been thirty-three feet, uniform from the center as is established by those monuments; on the south side it has varied. We think, therefore, it is conclusive in this case that there has been a user of this street as a sixty-six foot street sufficiently to make a complete dedication of it for all uses, and we therefore say that this is a sixty-six foot street lawfully.

The question remaining is as to the statute of limitations. We are pointed to three cases (*Cincinnati* v. *Church,* 8 Ohio, 298; *Williams* v. *Presbyterian Socy.,* 1 Ohio St., 478; *Cincinnati* v. *Evans,* 5 Ohio St., 594), wherein the Supreme Court of this state has held that the public may be estopped, or the statute of limitations may run against the public in its use of a street.

Then we are pointed to cases, an equal number, a greater number we will say of the latest cases, where the Suprme Court has held that the public can not lose its rights in the street.

By some authorities it is held to be a nuisance to occupy any part of the public highway, and that repeating a nuisance from day to day and time to time, the statute can never run against a public nuisance; and if that is the law, if that is the ground,

why it is well taken, for that doctrine is well established in the law of nuisances.

Then it is claimed by some that the Supreme Court has never yielded this doctrine; for it has come to be thoroughly conceded, except in cases where it would work an extreme hardship by reason of the owner of the adjoining lands having built out upon the street very expensive buildings, and he may be greatly injured by having to cut them down, and the public good stood by and did not interfere; and some authors put it upon the ground of equitable estoppel; and it is claimed by some that this marks the distinct difference between the two classes of cases in this state.

Now in this case ·it has been argued that the real difference between these two holdings in this state, these two opposite holdings—apparently opposite—is this, that a county is only a *quasi* corporation representing the state, and the statute never can run against the state, and the county so representing the state as it does, the statute of limitations can not run against the county, and therefore a highway out in the country is distinguished from a street in the city; that no rights can be gained in it, on the ground it is the state that is being interfered with through its agent, the county commissioners of the county.

But a municipal corporation has two existences; one its individual rights and another its public rights. In its private rights and obligations it has always been held that the statute of limitations will run against it, but in its public rights, wherein it represents the state, it is held that the statute of limitations does not run against a city any more than it would run against a county or against the state.

Now in so far as the city exercises its dominion and jurisdiction over the streets of the city, it is one of its public duties; it is a duty that is placed upon it as the agent of the state, and not in its private right, or by reason of its private existence. That being true as to its streets, it stands in precisely the same situation that the county does to the highway. Hence the argument don't hold good.

We believe that some of the cases in this state that have held that the statute of limitations may run against a municipality

do cause a great hardship, and while they have not been over-ruled, and have been recognized in later decisions, yet I believe for one, and have so stated heretofore from the bench, that the real ground of those cases is on the ground of equitable estoppel, and that the doctrine to-day is in this state, thoroughly established outside of these cases, as an independent principle of law from those, that where any one trespasses by reason of fences or shrubbery or trees or anything of that nature upon the highway, whether it be a street or highway in the country, that the party can not plead the statute of limitations.

Now it is said this is going to work a great hardship, but the evidence in this case shows that the plaintiff has more land than the land she purchased, aside from the street claimed by the village or by the city. If the city gets all the land it claims there, she still has two feet more from rear to front than her deed calls for; she loses nothing; it seems like losing something, but it is really losing nothing, and the shrubbery that is along there as shown by the evidence amounts to mere nothing. That part of it that is prized at all can be easily set back. There are trees there; if they establish this as a sixty foot street that brings those trees right in the center of the walk, more nearly in the walk than it would to make it the width claimed by the city.

In establishing it by the claim of the city it would seem hardly necessary to destroy the trees, from the evidence here, because while they will lie in the walk, it will only be in the edge of the walk. You can not go into any town or city hardly that you do not see trees standing in that way; it is a common thing, and no one objects to it; they think more of the shade than they do for that little bit of walk.

We think, therefore, the plaintiff has not shown any right to recover in this case, and her petition is dismissed. A decree may be taken accordingly.

*D. J. Nye, C. A. Metcalf* and *A. Z. Tillotson,* for plaintiff.

*E. G. Johnson* and *W. B. Bedortha,* for defendant.