## OBTAINING TITLE TO STREET BY ADVERSE POSSESSION.

[Circuit Court of Lucas County.]

S. BELDEN E. SEESE v. THE VILLAGE OF MAUMEE.

Decided, October 30, 1905.

*Streets—Adverse Possession of—Title Obtained Thereby, When—Encroachment upon, by Valuable Permanent Structures—Permissive. and Partial Encroachment by Fences and Hedges—Action by Occupant to Quiet Title—Application of the Statutes—Right of Public "to" Distinguish from Right of the Public "in" a Street—Estoppel of Municipality—Admissions by Claimant Subsequent to his Seizure—Do not Suspend the Running of the Statute, When.*

1. Whether Section 4977, having reference to actions to quiet title to streets held adversely for more than twenty-one years, and more especially that part of it which was added by the amendment of 1889, applies to a case where the streets have been opened, is a matter of grave doubt.

2. But notwithstanding the uncertainty as to the application of· the statute, it is entirely clear under the authorities that one may by adverse possession obtain title to streets which have been regularly laid out and opened.

3. There is a marked difference between an encroachment upon a part of a street, and the entire occupation of the street; where the exclusion Is entire for twenty-one years, the fact that the barrier was frail and unsubstantial does not prevent the possessor from successfully asserting title, and the public loses its rights both in and to the street. (*Wright* v. *Oberlin,* 3 C. C.—N., S., 242, and *Morehouse* v. *Burgot,* 22 C. C., 174, questioned; *Mott* v. *Toledo,* 17 C. C., 472., approved).

4. The remark incidentally made by one who had fenced in a parcel of land that the street was included within the fence does not amount to a declaration on his part that the right of the public is superior

to· his own in the strip once platted as a street, which has been enclosed.

PARKER, J.; HAYNES, J., and WILDMAN, J., concur.

The plaintiff began this action in the court of common pleas of this county on the 2d day of October, 1903. It is in the nature of an action to quiet title to certain tracts or strips of land that were at one time laid out as streets in the village of Maumee, in this county. From the judgment of the court of common pleas in the case an appeal has been taken to this court and the case has been tried before us. The plaintiff says in his petition that he is the owner of lots 1, 2, 3, 4, in block No. 9, and lots number 1, 2, 3, 4, 5, 6, in block No. 10, and water-lots number 6, 7, 8, 9, 10 and 11 of that village; that all of these lots are in Wolcott's addition to the village of Maumee, Lucas county, Ohio. It appears that the lots mentioned in the blocks named comprise the whole of these blocks 9 and 10, and that these blocks lie upon the south side of one of the main streets of the village, called Wolcott street; that this street is sometimes called the river road, sometimes Detroit avenue. It runs east and west by these premises, and these lots lie between this street and the Maumee river. The water lots lie south of blocks 9 and 10, being separated therefrom by Water street. Johnson street, a part of which is in dispute here, lies between blocks 9 and 10, block 9 being on the upper or west side and block 10 being on the lower or east side of this street. The dedication of the plat in which these lots are described and in which these streets are dedicated by Mr. Wolcott occurred in 1837.

It has been said that this action is brought by the plaintiff under favor of Section 4977 of the Revised Statutes, more especially the part of that section which was added by amendment in 1889. But it is contended on behalf of the village that the action is not maintainable under these provisions of the statute, because these streets were at one time open and the statutes applies only to cases where streets have not been opened.

It is perhaps inaccurate to speak of the case as being brought under the statute at all. The statute does not provide for any actions or any remedy; it is a part of the statute of limitations

and it provides primarily for a defense.  These provisions added in 1889 applied specifically to streets, and seemed to provide the results of certain actions with respect to streets— that is to say, the effect of fencing up certain streets.  While, as I have said, we deem it inaccurate to speak about the action as having been brought under any of the provisions of this section, yet the result of adverse possession for twenty-one years, under certain circumstances, is to give to the possessor a title, and the question we have to consider is whether under any of the provisions of this section, the plaintiff has such title as that he may maintain an action to quiet title, or may resist a claim to the streets made on behalf of the village.

I shall not stop to read the section, but will say that we entertain very serious doubts whether the plaintiff has brought himself within the provisions of this amendment to the statute made in 1889; that is to say, we question very much whether this part of the statute applies to cases where streets have been opened; and we find in this case that in pursuance of an ordinance for the improvement of these streets, passed May 29, 1843, these streets were opened; we find the preponderance of the evidence is to that effect; that is to say, that sufficient was done by and on behalf of the village to amount to the opening of the streets, though we do not believe that the streets were improved as provided by that ordinance; but that sufficient authority was exercised over the streets and sufficient use was made by the public to amount to an opening of the streets.  The ordinance provided for the grading of Water street, which runs in an easterly and westerly direction at this point between Wolcott street and the river, and it appears that at about this point there was some grading done upon what was supposed to be Water street, some leveling up to make it passable by teams. But we find that whatever was done with respect to the attempt to improve Water street was not done upon what was actually Water street at all; that Water street, in fact, was in such position on the bank of the stream, the side of the hill forming the upper bank, that it could not be traveled over with teams, and that the teaming that was done, according to the testimony of witnesses, must have been done upon these

water-lots between Water street and the river; and it is very evident to us that there was never any teaming done over Johnson street between Wolcott street and the river. We are entirely satisfied upon that point.

The ordinance in question provides for the improvement of Tappan street, which was along the east side of block 10 extending from Wolcott street down to Water street, so that it might be traveled by teams; the ordinance provides specifically for that, and it provides for the improvement of Water street to the westward as far as Forrer street; and it seems entirely clear to us from the testimony of witnesses that whatever was done by way of improving the street so that teams might travel from Wolcott street down to Water street, was done upon Tappan street. Indeed, it appears from the testimony that in early times there were some docks built in this vicinity, some in the immediate vicinity of these water lots, some further east and that there was considerable traffic here, there was some boat building, etc., and occasion for people to go up and down the banks and to do hauling up and down there. But that all seems to have come to an end about the middle of the last century and the traffic ceased, and the docks and whatever improvements there were in that vicinity were allowed to go into disuse and decay, so that there is very little, if anything, now evidencing such former occupation and use.

Now, notwithstanding the fact that the plaintiff's case may not come within in the provisions of this amendment to this section because of the streets having been opened up, we think it is entirely clear under the authorities that one may obtain a title to streets, which have been regularly laid out and opened, by adverse possession to the exclusion of the public for a period of twenty-one years, and the question that we have considered and that we shall pass upon is whether there has been such use and occupation of the predecessors in title of Mr. Seese as puts him in the position where he may have his title quieted to the parts of Johnson street and Water street which are in controversy.

In certain of the earlier cases, one, *Cincinnati* v. *Church*, 8th Ohio, 299; another, *Williams* v. *Church*, 1st Ohio St., 478,

and another, *Cincinnati* v. *Evans,* 5th Ohio St., 549, the doctrine appears to have been recognized that title to parts of streets might be acquired by adverse possession. It has been said in later cases with respect to these holdings that while the judgments were right, they should have been put upon the ground that the city was estopped from claiming the parts of streets occupied by private structures, and there seems to be good reason for this contention; and if in cases like this, the city might be estopped, it is apparent that it would not require a period of adverse possession of twenty-one years in order that the estoppel might be effective; the estoppel might be effective in a very short period of time, the twenty-one years' period would have no influence upon that question at all, at least it would not have a controlling effect. These earlier cases are reviewed by our Supreme Court in several late cases and I call attention especially to the case of *Heddleston, Supervisor,* v. *Hendricks,* 52 Ohio St., 460, where they are reviewed by Chief Justice Minshall, and I can not do better in discussing this case and these earlier cases than to read what Chief Justice Minshall has said about them. I read from page 465:

"The general rule is that the statute of limitations does not apply as a bar to the rights of the public, unless expressly named in the statute; for the reason that the same active vigilance can not be expected of it as is known to characterize that of a private person, always jealous of his rights and prompt to repel any invasion of them. But in the cases of *The City of Cincinnati* v. *The First Presbyterian Church,* 8 Ohio, 298, and of *The City of Cincinnati* v. *Evans,* 5 Ohio St., 294, a different rule was applied, and, in the first case, the right of the city to a portion of its public square occupied by the church, and, in the other case its right to a portion of one of its streets, encroached upon by the building of the defendant, a private person, was, in each case, held barred by an adverse possession of twenty-one years. But these cases are regarded as exceptional; and confined to municipal corporations in cases where their possession has been disturbed by the erection of large and valuable structures under such circumstances as preclude the idea that the encroachment was simply permissive on the part of the municipality. Thus, in *Lane* v. *Kennedy,* 13 Ohio St., 42, where a landlord extended his fences so as to include a portion of the highway not then used or needed for the public

travel, and continued the same for twenty-one years without any objection, it was held that such partial encroachment was not necessarily adverse to the public, nor inconsistent with its easement, and, therefore, constituted no bar to its reclamation by the supervisor when required by the public travel. The encroachment in this case was upon a highway within the town of Oxford, and which then formed a part of one of its streets. And Peck, J., in distinguishing the case of *Cincinnati* v. *Evans* observed that 'by a reference to the facts therein stated, it might with equal, if not greater propriety, have been placed upon the ground of an *estoppel in pais* on the part of the city authorities; the building having been located by the city surveyor and upon lines previously established and built upon.' Again, it is held in *McClellan* v. *Miller*, 28 Ohio St., 488, that an encroachment on a highway regularly laid out and established, by putting up a fence or planting a hedge within established limits, does not constitute such adverse possession as will confer title. After reviewing the previous cases Wright, J., said: 'When roads are laid out and travel is limited, necessity may not require that the whole width should be opened when a less quantity answers every purpose. But the fact that a portion of the highway remains in the possession of adjoining owners is merely a matter of sufferance, from which rights can not accrue. If, as in 5 Ohio St., 594, such proprietor should erect permanent improvements upon the ground in question, indicating an intention permanently to appropriate the land, a question of adverse possession might arise.' He then adds: 'A fence is not such permanent improvement. Nor does the fact that a hedge was planted vary the case. The public have a mere easement for the road. The proprietor still owns the fee, and may use it in any way not inconsistent with the purposes of a road. He may plant trees; he is entitled to the herbage; and the setting out of a hedge entirely comports with his own rights, while it does not conflict with those of the public.' "

And there is a further discussion of the matter. Now counsel for the village insist that what is here said about fences, hedges and the like is clearly applicable to the case at bar, because the only obstruction that was placed across these streets by the owners of these lots was by way of fences cross Johnson street on the line of Wolcott street, and by way of a fence at either end of that part of Water street which traverses the southern boundary of blocks 9 and 10.

But a study of this case and others discloses a marked difference between an encroachment upon a street by a partial occupation thereof, by the construction of ordinary structures, (not permanent, as in the Cincinnati case), and an entire exclusion of the public from the streets, and we think that where the public is entirely excluded from use of the street for a period of twenty-one years, it makes no difference how frail or unsubstantial the barrier may be that excludes the public; that it is not necessary to exclude them by a permanent structure; it is sufficient that the public is excluded. We think that this distinction was lost sight of by Judge Caldwell when he came to decide the case of *Wright* v. *Oberlin*, 3 C. C.—N. S., 242, and *Morehouse* v. *Burgot*, 22 C. C., 174, but that the distinction was recognized in the case of *Mott* v. *The City of Toledo*, 17 C. C., 472.

We conclude that the evidence supports the contention of the plaintiff that the public has been excluded from the use of these streets by the fence across them at the points I have described for a period of more than twenty-one years before this action was begun. Mr. Darmstadt became the owner of the premises by a tax title about 1867, and it seemed that he went into the occupation of the premises about that time; his title was perfected by deed in 1873, but the testimony shows that he built a fence along the line in front of blocks 9 and 10, along the south line of Wolcott street and across Johnson street at that point, as early as 1870, and that about that same time he built a fence from the northeast corner of block 10 down to the river, thereby crossing Water street, and from the northwest corner of block 9 down to the river, thereby crossing Water street. The first fence he built appears to have been substantially around block 9; according to the testimony of some of the witnesses the other fence was built a few months later; according to the testimony of other witnesses a year or two later. But we are convinced from the testimony that from about the year 1870 until a year or two before the beginning of this suit, these fences were maintained continuously, though at times they were decayed and out of repair, yet they were kept in condition so that they would turn stock at any time and so that the public could not use these streets for traffic,

and could not pass upon these streets as foot passengers otherwise than by passing through the barriers by way of a gate part of the time, and by way of bars part of the time, erected by Mr. Darmstadt as a part of his fence across Johnson street. Upon the south line of Wolcott street upon Water street, there was no way of getting by the fence other than by climbing over it or under it. The fence would turn stock. This first fence, which, as I have said, was built substantially around block 9, does not appear to have conformed to the line of block 9 upon the south, but it went far enough south at the east end to take in about half of Water street; it was then continued in a westerly direction to about the south side of Water street, or within about a foot of that point, where it joined the fence leading from Wolcott street to the river, so that this fence at the west end took in all of Water street but about one foot. Perhaps it left no obstruction, for a while, to that part of Water street which had been used by the public in earlier times, or I should say that part of the territory which was supposed to be Water street and so used by the public in early times, to-wit, the water-lot line of travel on the level land.

Upon the proposition that this amendment to Section 4977, probably does not apply to the case at bar, I meant to state, and will now cite the case of *McClelland* v. *John Miller*, 28 Ohio St., 489, and *Grore* v. *Graham*, 41 Ohio St., 303, and this case of *Heddleston* v. *Hendricks*, 52 O. St., 460, which comes under Section 4668 of the Revised Statutes, a section applicable to county roads that have not been opened and similar in its provisions or its general scope and purpose to this amendment to Section 4977. It was held in those cases that the statutes applied only to roads that had not been opened at all. But the first clause of Section 4977 applies as well to streets as to cases where the ownership or right is claimed by municipal corporations as to other territory, where the claim is made by private proprietors. The cause which I refer to is "an action for the recovery of title or possession of real property can only be brought within twenty-one years after such action accrues," and while, as I say, that was intended to be used defensively—provides a defense—it results when an action is brought like this

to quiet title and claim to the property is made on behalf of another, that it may be used in support of the cause of action of the plaintiff.

It is contended by counsel for the village, as we understand it, that this fence was in the nature of a nuisance prohibited by statute, and that there is no statute of limitations under which one may claim a right to maintain a fence; that no length of time will bar the public authorities from proceeding to remove the nuisance from streets, and that being true, it must result that there is no bar to the right of the city here to claim these streets and to ask for the removal of these fences. We are cited to the case of *Little Miami R. R. Co.* v. *Comrs. Green Co.*, 31 Ohio St., 338. It appears that that was a case in which the railroad company was permitted to encroach upon a public road under an agreement which contained the condition that the road was to be restored to its former state or in a sufficient manner not to impair its usefulness, and it was held that under this agreement and arrangement, the public authorities had the right to require the removal of the obstruction; that it did not authorize the company to permanently appropriate any portion of the public highway, by the obstruction. Now in the course of discussion in this case, reference was made to the law upon the subject of public nuisance. We take it that principle applies in a case where the authorities maintain their rights in a street or to a street and one undertakes to obtain an easement or a right therein by erecting a nuisance, and not to a case where one, by a fence or other structure, entirely excludes the public from the street; that the public's right to a street and the public's right in a street are two different things. Where the public claims its thoroughfare, maintains its rights to its thoroughfare, one may not by transgressing upon the limits of that street by an unauthorized obstruction defeat the right of the public to have that obstruction removed. There is another case upon this subject, where one claimed an easement in the street by reason of certain pipes erected along and under the surface of the street (that was a Springfield case I believe). These pipes were destroyed by the construction of a sewer. This is the case of *Eister* v. *Springfield*, 49 Ohio St., 92, and there this doctrine was enforced. But

we understand it to be well settled that where the public is
entirely excluded from the use of the street, where the whole
street is occupied by one using it adversely, claiming it adversely
to the public, that the public may lose its right in the street and
to the street altogether.

It is urged on behalf of the village here that this use of it, even
if it has been for a period of twenty-one years, has been per-
missible, or that the rights of the village had been recognized
by the Darmstadt's, who fenced up the street and used it; and
emphasis is laid upon by the testimony of Mr. Wagner, who
says that the elder Darmstadt, through whom this later pro-
prietor claims, in 1889 said to him, pointing to the part of the
street whch was laid out as Johnson street, "What is a street."
It appears that that was fenced in at the time, and fenced in as
part of block 10, and the fact that it was fenced in with block
10 is what called for the question upon the part of Mr. Wagner,
that brought this response from Mr. Darmstadt that it was
fenced in and had a gate leading from Wolcott street. Part of
this was cultivated and this part which had been Johnson street
was uncultivated; Mr. Wagner inquired of Mr. Darmstadt why
this was that he kept it in that rough uncultivated condition and
Mr. Darmstadt said that was a street.

Well, now, what effect is to be given to that. As a matter of
fact it was fenced up; the public could not use it for travel at
all, excepting foot passengers and those must use it by the
gate or pair of bars or climb the fence that had been constructed
there by Mr. Darmstadt. The whole subject of such declara-
tions made by an occupier is very fully discussed in the case
of McAllister v. Hartzell, 60 Ohio St., 69. I can not take time
now to read much from this case, but most all of what is said
in the opinion of Judge Spear upon the branch of the case which
involved declarations of the occupier, is applicable to the case
at bar. What Mr. Darmstadt said upon this subject at this time
was quite proper. In a sense that was a street; it had been regu-
larly laid out and platted as a street; and yet he might have men-
tioned it as such street as he was using as a lane for his cattle
down toward the river at this point. There is much testimony
tending to show that parts of the land that was fenced up was

much narrower than the street as laid out; that the fences leading toward the river at this point were not more than eight or ten feet apart; and this must have been so part of the time that it has stood there; at other times they were as much as fifty feet apart, yet the street itself was sixty feet wide. But these declarations did not amount to an acknowledgment upon the part of Mr. Darmstadt that he did not hold it adversely; did not amount to an acknowledgment upon the part of Mr. Darmstadt that the public had a superior right to that than he; and Mr. Darmstadt may not have appreciated at that time the fact that he had occupied it so long that he might successfully deny the right of the public to any use of the street.

Now I will read the first clause of the syllabus in this case of *McAllister* v. *Hartzell*, 60 Ohio St., 69:

"Where the statute of limitations is interposed in an action of ejectment, and it is shown that the original seizure was a disseizin, any subsequent act or declaration of the claimant, or his predecessor in title, which does not estop the claimant to plead the statute, nor suspend the right of the holder of the title to prosecute an action to recover possession, will not be sufficient to arrest the running of the statute. Neither a mere offer to buy within the twenty-one years, nor an acknowledgment by the claimant within that time that the title is in another, or that the claimant does not own the lands, will have that effect."

Mr. Darmstadt did not say so much as is covered by this decision; he did not offer to buy; he was not talking to any representative of the village; he did not acknowledge the ownership of the village; he did not say that he did not own it himself. As I say, this matter is discussed very fully by Judge Spear in this case, and I will read part of the opinion found on page 93.

But first I will refer to *Dayton* v. *Marshall,* 1 Rice Eq., 373. I will read what the holding in that case was, from page 386:

"It is believed that no case can be put in which a man knows that another claims and is in enjoyment of what belongs to him, *where there is nothing to prevent his doing so,* that he will be barred by the statute."

Now speaking of this case, Judge Spear says on page 93:

"We are of the opinion that the principle announced in *Dayton* v. *Marshall, supra,* is a just one, that it is applicable to the facts of this case, and that the rule should be that where it is shown that the original seizure was a disseizin, no subsequent act or declaration of the claimant should be held to toll the statute which does not deprive the holder of the title of his right to prosecute his action to recover possession or suspend the same. This is a simple, easily understood text, and we believe is not only within the letter, but clearly within the spirit, of the statute. Applying this rule to the case at bar it is clear that neither the mere offer to buy, nor the acknowledgment of the claimant that the title was in another, or that he did not own the land, is sufficient to suspend the running of the statute. Such acts and declarations raise no conclusive implication that the claimant intends to attorn to the holder of the title or yield the possession."

Here we find that the public was excluded; we find that this is an act, which, in the absence of any evidence of permission given by the public, is unequivocal; it speaks louder than words; that it disclosed a purpose to use this to the exclusion of the public. If the public submits to such exclusion for a period of twenty-one years, we hold that it may not thereafter assert successfully a claim to the street. Upon the whole we conclude that the decree should be for the plaintiff, quieting his title.